**Freddie Lee HALL, Petitioner,**

v.

**Louie L. WAINWRIGHT, Secretary, Florida Department of Offender Rehabilitation, Richard Dugger, Superintendent of Florida State Prison at Starke, Florida, and Jim Smith, Attorney General of the State of Florida, Respondents.**

No. 82–195–Civ–Oc.

United States District Court,
M.D. Florida,
Ocala Division.

May 18, 1983.

Jerry T. Lockett, Tavares, Fla., for petitioner.

Robert J. Landry, Tampa, Fla., for respondents.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

### I. BACKGROUND

This case is before the Court upon Petition for a Writ of Habeas Corpus, filed in the Middle District of Florida on September 30, 1982. In conjunction with his petition, petitioner filed an application for a stay of execution of his sentence of death, scheduled for October 6, 1982, at 7:00 o'clock a.m. A hearing on petitioner's application for a stay of execution of the sentence of death was held on October 5, 1982. An order was entered that date by the Honorable Charles R. Scott granting the stay of execution pending a decision by the United States Court of Appeals for the Eleventh Circuit in the case of *Ford v. Strickland* (now reported at 696 F.2d 804 (11th Cir.1983) (*en banc*) *vacating* 676 F.2d 434 (11th Cir. 1982)). Judge Scott noted that while petitioner alleged numerous grounds for relief, that ground which raised issues to be resolved in *Ford v. Strickland* was sufficient to require the Court to grant the stay of execution pending the outcome in that case. *Goode v. Wainwright,* 670 F.2d 941 (11th Cir.1982). Accordingly, Judge Scott entered a stay of execution on October 5, 1982.

The instant petition was then transferred pursuant to Middle District Rule 1.03(d) to the Honorable Susan H. Black for all further purposes and proceedings. (See Order entered on October 8, 1982, by Judge Charles R. Scott). In order to facilitate a prompt review on the merits of the remaining grounds raised by the petitioner, the Court reviewed the petition and the grounds asserted in support thereof. The Court also reviewed the response to the petition by the State of Florida.

The Court noted that throughout their response to the petition, respondents asserted that petitioner failed to object "at trial or on appeal" to a proceeding now challenged on federal habeas review. Respondents argued that this failure precludes collateral relief by way of federal habeas review, and have cited *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976) and *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982) for the proposition.

The Court also noted, however, that petitioner had filed a Fla.R.Crim.P. 3.850 Mo-

tion for Post-Conviction Relief in the Circuit Court of the Fifth Judicial Circuit, Sumter County, Florida on September 28, 1982, in which he raised almost every claim before this Court in the instant petition for habeas corpus. The Rule 3.850 motion was denied after an evidentiary hearing by Judge John W. Booth on October 1, 1982. On October 5, 1982, the Supreme Court of Florida upheld this denial and at the same time denied petitioner's state habeas petition. *Hall v. State,* 420 So.2d 872 (Fla. 1982).

In order to ascertain the procedural status of petitioner's federal claims, the Court on January 21, 1983, ordered that petitioner respond in writing to each and every assertion by the State of Florida that a claim raised by petitioner is precluded from federal habeas review. On February 9, 1983, petitioner did so. After reviewing this memorandum, the Court concluded that a reply from the State of Florida would be useful and issued an order granting the State time to do so prior to this Court proceeding on the merits of the habeas petition. On February 28, 1983, the State filed its reply memorandum.

The Court has now concluded its review of the habeas petition and will, by separate judgment this date, dismiss it in part and deny it in part for the following reasons.

## II. INSTANT FEDERAL CLAIMS

Hall presents twenty-six constitutional claims for federal review. These may be divided into those going to the guilt phase of his trial, and those going to the sentencing phase. As stated by Hall, they are:

*Guilt Phase*

A. Mr. Hall was absent from the courtroom several times during the course of his capital trial, in violation of his rights to due process of law and to confrontation under the Sixth and Fourteenth Amendments to the United States Constitution.

B. Mr. Hall's trial was rendered fundamentally unfair, in violation of the Fifth and Fourteenth Amendments, by the admission of evidence of collateral offenses, which became a feature of the trial rather than an incident thereto.

C. Mr. Hall was denied his rights to due process of law and to be free from cruel and unusual punishment when he was convicted and sentenced to death without sufficient evidence to prove his guilt beyond a reasonable doubt, in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States.

D. The trial court failed to define the burden of proof in the instructions to the jury at the guilt phase of Mr. Hall's trial, in violation of his rights to due process of law and to reliability in the guilt-determination of a capital trial, guaranteed by the Eighth and Fourteenth Amendments to the Constitution of the United States.

E. Mr. Hall's conviction was the product of an unreliable fact-finding process because the witnesses continually testified regarding evidence which was never introduced at trial, in violation of Mr. Hall's rights under the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

F. References to the previous trial for the Coburn murder during the trial in the instant case deprived Mr. Hall of his right to a reliable fact-finding process in a capital trial under the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

G. The introduction into evidence of Mr. Hall's confession violated his privilege against self-incrimination guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States.

H. The prosecutor improperly commented on Mr. Hall's failure to testify, attempted to appeal to the sympathy or fear of the jury and argued matters not supported by any evidence, in violation of Mr. Hall's rights to due process of law, to a fair trial by an impartial jury and to a reliable determination of guilt in a capital trial as guaranteed by the Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States.

*Sentencing Phase*

I. The Florida Supreme Court affirmed Hall's death sentence for the Hurst murder, despite its simultaneous vacation of Hall's conviction of first degree murder for the Coburn murder which was presented to the trial jury and judge in aggravation of the Hurst murder, in violation of Hall's due process and Eighth Amendment rights to a fair and reliable determination of penalty under the Eighth and Fourteenth Amendments to the Constitution of the United States.

J. The death sentence cannot be imposed on Mr. Hall where there was no proof beyond a reasonable doubt that he killed, intended to kill, or contemplated that Hurst be killed.

K. The trial judge, in both his imposition of sentence and his instructions to the sentencing jury, improperly limited consideration of mitigating circumstances to those enumerated in the death penalty statute, in violation of the Eighth and Fourteenth Amendments to the Constitution of the United States.

L. Because of an inherent ambiguity in the Florida death penalty statute concerning the scope of mitigating circumstances which could be considered in sentencing, persons tried under the statute prior to July 3, 1978, were deprived of their right to a fully individualized sentence determination under the Eighth and Fourteenth Amendments.

M. The prosecutor's improper remarks during his argument at the close of the penalty phase deprived Mr. Hall of his right to a fair trial and to a fair, reliable and non-arbitrary sentencing decision, in violation of the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

N. The instructions to the jury in the penalty phase unconstitutionally shifted to Mr. Hall the burden of proving that the mitigating circumstances outweighed the aggravating circumstances, in violation of his rights to due process of law and to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments to the Constitution of the United States.

O. The sentencing instructions at Mr. Hall's trial allowed for the arbitrary and capricious infliction of the death sentence by failing to adequately guide and channel the jury's discretion, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

P. The trial court and the Florida Supreme Court improperly found and weighed certain aggravating circumstances and failed to consider and weigh certain mitigating circumstances in violation of Fla. Stat. § 921.141, thereby rendering defendant's death sentence violative of the due process and cruel and unusual punishment provisions of the United States Constitution.

Q. The state court's construction of the "heinous, atrocious, or cruel" aggravating circumstance in Mr. Hall's case was unconstitutionally broad and vague, in violation of Mr. Hall's rights under the Eighth and Fourteenth Amendments to the Constitution of the United States.

R. Mr. Hall was deprived of the due process required in capital prosecutions by the state's failure to provide notice of the aggravating circumstances upon which it intended to rely, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

S. As applied, the Florida death penalty statute violates the Eighth and Fourteenth Amendments because it fails to channel jury discretion, permits the interjection of irrelevant factors into the sentencing process by the jury and trial judge, fails to provide for fully individualized determinations of sentence, and vitiates the appellate review required in capital cases.

T. The death penalty is imposed in Florida in an arbitrary, capricious and irrational manner, based upon factors precluded from consideration by the Florida death penalty statute and the United States Constitution, including but not limited to geographical differences in the willingness to seek and

impose the death penalty, the economic status of the defendant, the sex of the defendant, the occupation of the victim, and the race of the victim, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

U. Mr. Hall was denied the effective assistance of counsel at the guilt and penalty phases of his capital trial, in violation of. his rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

V. Mr. Hall was deprived of the effective assistance of counsel on appeal, in violation of his rights under the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

W. The Grand Jury was selected in a manner that under-represented women, in violation of Mr. Hall's rights under the Sixth and Fourteenth Amendments to the Constitution of the United States.

X. The prosecutor improperly used peremptory challenges to eliminate Blacks from the jury in violation of Mr. Hall's rights to a fair and impartial jury, to equal protection and to a fair and reliable determination of sentence under the Sixth, Eighth, and Fourteenth Amendments to the Constitution of the United States.

Y. Mr. Hall's jury was selected in a manner which under-represented Blacks, in violation of his rights under the Sixth and Fourteenth Amendments to the Constitution of the United States.

Z. The Supreme Court of Florida's practice, unauthorized and unannounced by statute or rule, of requesting and receiving ex parte information concerning appellants in pending capital appeals, without notice to these appellants or their attorneys, denied death-sentence appellants, including Mr. Hall, due process of law, the effective assistance of counsel, and the right of confrontation and subjected them to cruel and unusual punishment and to compulsory self-incrimination, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendment.

## III. PROCEDURAL POSTURE OF FEDERAL CLAIMS

Only five of the instant federal claims were raised on Hall's direct appeal of his conviction. Most of the instant claims were raised initially by way of a motion for post-conviction relief under Fla.R.Crim.P. 3.850 (hereinafter "3.850 motion"). Furthermore, of the five claims raised on appeal, two reappeared in the 3.850 motion with additional allegations of error. The State of Florida argues that many claims are precluded from review on the merits due to procedural default by Hall.

In order to fulfill the policies and purposes underlying the doctrines of exhaustion and preclusion, while also affording petitioner the fullest opportunity for legitimate federal review of his constitutional claims, this Court has carefully reviewed the motions, briefs, and opinions filed during Hall's direct appeal, his 3.850 motion, and the state habeas corpus proceedings. The Court has compared these state claims and their disposition to the instant habeas petition in order to determine the procedural posture of each and every claim raised by the petition. This review is necessary in order for the Court to determine whether it should (1) dismiss the petition pursuant to 28 U.S.C. § 2254(b) for failure of Hall to exhaust his state court remedies as to some claim, *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982); or (2) deny a particular claim with prejudice as it is precluded from federal habeas review under the doctrine of *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1976); and (3) proceed to consider the merits of all exhausted claims. The Court has now concluded this review and will first rule upon the procedural status of each federal claim.

*Guilt Phase*

### Claim A

■ Federal Claim A was not raised on direct appeal. Nevertheless, the Florida Supreme Court discussed the merits of this claim in ruling on the 3.850 motion. *Hall v.*

*State,* 420 So.2d 872 (Fla.1982).[1] Accordingly, this Court finds that federal Claim "A" has been exhausted, and will, therefore, consider it on its merits later in this Opinion.

### Claims B and C

These claims were raised and resolved against Hall on direct appeal,[2] and they will be considered on their merits later on in this Opinion.

### Claims D, E, F, and G

These claims were not raised on direct appeal. Hall raised them initially as Claims D, E, F, and G of his 3.850 motion. *See* Exhibit "B" to State's Response to Petition for Writ of Habeas Corpus, filed herein on November 2, 1982 (Exhibit "B"), 52–58. The state in its response to that motion argued that these claims were precluded from collateral review for failure to raise them at trial or on direct appeal. Exhibit "B" 135–36. Judge Booth denied each one as a ground for relief. Exhibit "B" 599.

On appeal, the Florida Supreme Court held that:

> The majority of issues raised in the motion to vacate were raised on appeal. *Most of the remaining issues could have been raised there. They are, therefore, not matters which will support a collateral attack.* Several of the points raised, however, merit discussion.

*Hall v. State of Florida,* 420 So.2d 872, 873 (Fla.1982). (citations omitted) (emphasis added).

■ The Supreme Court did not discuss 3.850 Claims D, E, F, and G on their merits, and went on to affirm the trial court's denial of relief. *Hall v. State,* 420 So.2d 872, 874 (Fla.1982). Therefore, a fair reading of this opinion requires this Court to conclude that the Florida Supreme Court held[3] Claims D, E, F, and G precluded from collateral review in the courts of Florida.

■ Under *Sykes,* a state court's holding of procedural default in the state courts prevents federal review of that claim absent a showing of cause and prejudice to excuse the default.[4] *Engel v. Isaac,* 456

1. As Hall grounds this claim in part on a Florida Supreme Court decision not handed down until after his direct appeal, *Francis v. State,* 413 So.2d 1175 (Fla.1982), it may be that that court discussed the merits of Hall's claim on the theory that it could not have been raised on direct appeal. In any event, where a state appellate court does not rely on procedural default, for whatever reason, the federal court must reach the merits also. *Grizzell v. Wainwright,* 692 F.2d 722, 725 (11th Cir.1982). *See County Court of Ulster v. Allen,* 442 U.S. 140, 152–54, 99 S.Ct. 2213, 2222–23, 60 L.Ed.2d 777 (1979).

2. Federal Claim B was Issue IV on appeal. Although the State argues that Claim B was presented on direct appeal as a state law claim, *see* Response to Petition for Writ of Habeas Corpus, filed herein on November 2, 1982, (Response) at 15, the Florida Supreme Court appears to have construed it as a federal constitutional claim in denying it. The Supreme Court held that evidence of a collateral offense did not become a "feature" of the trial which would, of course, raise the issue of fundamental fairness. *See Hall v. State,* 403 So.2d 1321, 1324 (Fla.1981). If this claim had not been raised as a federal claim on direct appeal, it would now be precluded from federal review. *See Engle v. Isaac,* 456 U.S. 107, 125–26 n. 28, 102 S.Ct. 1558, 1570 n. 28, 71 L.Ed.2d 783

(1982) and *Raulerson v. State,* 420 So.2d 567 (Fla.1982).

Federal Claim C was raised as Issue III on direct appeal and was denied. *Hall v. State,* 403 So.2d at 1324.

3. The Court must conclude that this was the holding of the Florida Supreme Court on these challenged remarks inasmuch as that court divided the 3.850 claims into three categories: (1) those raised on direct appeal; (2) those precluded from collateral review due to Hall's procedural default in the state courts; and (3) those which "merit discussion." *Hall v. State,* 420 So.2d at 873.

Since the 3.850 claims raised now as federal claims D, E, F, and G were not raised on direct appeal (category 1), nor discussed by the Florida Supreme Court in its denial of the 3.850 motion (category 3), this Court must conclude that these claims fell into category # 2—those precluded from collateral review in the state courts.

4. Petitioner, in response to the state's argument that this Court is precluded under *Sykes* from reviewing many of the claims in the instant petition, has conceded that he did not raise many of these claims either at trial or on direct appeal, Petitioner's Response to Order of Court and Reply to Respondent's Answer, filed

U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *Wainwright v. Sykes,* 433 U.S. at 87, 97 S.Ct. at 2506.

Hall argues that there is cause and prejudice excusing all of his procedural defaults. He asserts that the cause for his failure to abide by the state procedural rule lies in an alleged ineffectiveness of counsel. Petitioner's Reply 16–22. Prejudice, he urges, is demonstrated by the fact that none of the procedural errors he committed could be considered "harmless" and as a result he was sentenced to death. *Id.* If both these allegations were accepted,[5] the Court would be required to excuse Hall's procedural default and consider the merits of his otherwise precluded claims. *Francis v. Henderson,* 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976). *Accord Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982); *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 91, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977).

■ Petitioner, however, has failed to satisfy either prong of the cause and prejudice requirements. Mere allegations of ineffective assistance of counsel do not satisfy the cause requirement.[6] *Sullivan v. Wainwright,* 695 F.2d 1306 (11th Cir.1983); *Washington v. Estelle,* 648 F.2d 276 (5th Cir.1981). If the law were otherwise, mere allegations of ineffective assistance of counsel would suffice to excuse all procedural default rendering the rule a nullity. *Lumpkin v. Ricketts,* 551 F.2d 680 (5th Cir.1977), *cert. denied,* 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977).

■ Having determined that excusable cause for Hall's procedural default, in the state courts does not exist, this Court need not examine the prejudice issue. The Court notes, however, that the argument advanced by petitioner that prejudice may be shown by the fact that he received a sentence of death is, as the State points out, without merit. Petitioner must show "actual and substantial disadvantage infecting the entire trial with error of constitutional dimensions." *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 1596, 71 L.Ed.2d 816 (1982). This petitioner has not done. This Court concludes, therefore, that federal Claims D, E, F, and G are precluded from review by this Court.

### *Claim H*

Comparison of his brief on appeal and the instant petition reveals that federal Claim H—improper prosecutorial remarks during closing argument—was partially raised by petitioner in Issue I of his direct appeal. The Court finds that federal Claims H(1)(a), (b), (c), (d), H(2)(b), and H(3)(a) were all

---

herein on February 9, 1983, (Petitioner's Reply), 27, but advances arguments that *Sykes* does not bar federal review in the instant case. These include: (1) that there may not be a procedural rule requiring timely objection in Florida; and (2) that there was no deliberate bypass by petitioner himself of his state court remedies. *See* Petitioner's Reply 10–14.

These two theories are without merit. First, there is no question that Florida has and enforces a procedural default rule where a motion to vacate initially raises issues which could have and should have been raised on direct appeal. *See e.g., Raulerson v. State,* 420 So.2d 567 (Fla.1982); and *Meeks v. State,* 382 So.2d 673 (Fla.1980). This rule has recently been upheld by the Eleventh Circuit. *Ford v. Strickland,* 696 F.2d 804, 816 (11th Cir.1983).

Secondly, the issue of deliberate bypass is irrelevant once a procedural default is found. Even if Hall himself did not deliberately bypass state appellate rules, "(i)n this Circuit a state prisoner can forego the opportunity to raise constitutional issues in habeas corpus proceedings ... by merely failing to follow them without showing both cause for the default and prejudice resulting from it. *Ford v. Strickland,* 696 F.2d at 817.

5. As noted by the court in *Engle v. Isaac, Sykes* "stated these criteria in the conjunctive," 456 U.S. at 134 n. 43, and a conclusion of lack of cause moots the inquiry regarding prejudice, or vice versa. *See Sullivan v. Wainwright,* 695 F.2d 1306 (11th Cir.1983).

6. Even assuming that where such allegations rise to the level of a Sixth Amendment violation that the cause requirement may be met, *see e.g. Huffman v. Wainwright,* 651 F.2d 347, 350–52 (5th Cir.1981) and *Washington v. Estelle,* 648 F.2d 276, 278 (5th Cir.1981), this Court has determined that the instant allegations of ineffective assistance of counsel are without merit. *See* discussion of claim "U" *infra* pp. 1240–1243.

raised by Hall on direct appeal and are properly before this Court under Section 2254(b) for its review on the merits.

Claim H, however, presents several other remarks—H(2)(a), H(2)(c), and H(3)(b)—for federal review which were not included in Issue I of the direct appeal. *See* Exhibit "A" to State's Response to Petition for Writ of Habeas Corpus (Exhibit "A"), Appellant's Brief 15–23.

These remarks were initially raised by Hall in his 3.850 motion and brief. *See* Exhibit "B" 58–59. The state, in its response, argued generally that all issues which could have been and should have been raised at the time of trial or on direct appeal should not be considered on the merits in a collateral proceeding. *Id.* at 134. The state argued specifically that those remarks raised on appeal by Issue I and denied by the Florida Supreme Court should not be relitigated. *Id.* at 136.

■ Judge Booth, in ruling on the 3.850 motion, held that the issue of improper prosecutorial remarks had been resolved against Hall on direct appeal and did not consider the merits. Exhibit "B" 600. On appeal, the Florida Supreme Court did not address the merits of Hall's claim of improper prosecutorial remarks. Therefore, this Court concludes that the Florida Supreme Court held[7] that Hall's failure to raise Claims H(2)(a), (c) and H(3)(b) on direct appeal constituted a procedural default which precluded collateral review in the state courts. This holding precludes federal review as petitioner has advanced no additional theory of cause and prejudice which would excuse his procedural default as to these claims.[8] Therefore, this Court concludes that federal Claims H(2)(a), (c) and H(3)(b) are precluded from review by this Court. Claims H(1)(a–d), H(2)(b), and

H(3)(a) will be considered on the merits later in this Opinion.

*Sentencing Phase*

### Claim I

■ This claim could not have been raised on direct appeal[9] and was therefore raised properly by the motion to vacate. The State responded on the merits of the claim, Exhibit "B" 136, as did Judge Booth's ruling. Exhibit "B" 599. The Florida Supreme Court specifically discussed the merits of Claim I and denied it as a grounds for vacating Hall's conviction. *Hall v. State,* 420 So.2d at 873–74. This claim will, therefore, be considered later in the Opinion.

### Claim J

This claim raises the issue of whether there was sufficient proof of intent to kill in order to permit the imposition of the death penalty. Hall relies on *Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), which had not been decided at the time of his direct appeal. Although changes in the law do not mandate collateral review for constitutional claims which were latent at the time of the direct appeal, *Engle v. Isaac,* 456 U.S. 107, 131, 102 S.Ct. 1558, 1573, 71 L.Ed.2d 783 (1982), this claim was addressed on its merits by the State, Exhibit "B" 136, Judge Booth (who distinguished *Enmund* and denied the claim), Exhibit "B" 600–01, and the Florida Supreme Court, *Hall v. State,* 420 So.2d at 874. This Court must, therefore, review the merits and will do so later in this Opinion.

### Claims K, L, N, O, Q, R, S, T

These claims all go to aspects of the penalty phase of Hall's trial. They were raised initially in Hall's 3.850 motion. The State of Florida has consistently argued

---

7. *See supra* note 3 and accompanying text.

8. *See supra* pp. 1229–1230.

9. Claim I challenges the reliance of the trial court on Hall's prior conviction for first degree murder as an aggravating circumstance justifying imposition of the death penalty where that

conviction was subsequently reduced to second degree murder. This issue could not have been raised on direct appeal because the reduction in his prior conviction occurred the same day as his direct appeal was denied. *See Hall v. State,* 403 So.2d 1319 (Fla.1981).

that these claims have been waived by Hall for failure to raise them at trial or on direct appeal. *See* Exhibit "B" 137–38 (Response to Motion to Vacate or Set Aside Conviction); Brief of Appellee 2–4, Attachment #2 to Supplemental Memorandum of Law, filed herein on February 28, 1983 (State's Brief on Appeal of the Denial of Post-Conviction Relief); and State's Response to Petition for Writ of Habeas Corpus, filed herein on November 2, 1982. Judge Booth, Exhibit "B" 601–03, and the Florida Supreme Court, *Hall v. State,* 420 So.2d at 873, held these claims precluded from collateral review.

Hall argues, however, that because both state courts in some way also touched upon the merits of these claims, the State of Florida has waived its procedural default rule as to these claims. He contends that any discussion of the merits of these claims brings this case within the rule that prohibits a federal court from applying a state timely objection rule where the state court itself has not done so. *See, e.g., Francis v. Henderson,* 425 U.S. 536, 542 n. 5, 96 S.Ct. 1708, 1711 n. 5, 48 L.Ed.2d 149 (1976); *Grizzell v. Wainwright,* 692 F.2d 722 (11th Cir. 1982); *Thomas v. Blackburn,* 623 F.2d 383, 386 (5th Cir.1980), *cert. denied,* 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 (1981).

This is, however, not necessarily true. In a careful review of the Supreme Court's opinions in those cases where the state courts have appeared to discuss the merits of a claim in conjunction with a ruling of procedural default, the Court of Appeals for the Fifth Circuit determined that resolution of the issue whether the lower federal court should have reached the merits turned on the Supreme Court's determination of the *basis* of the state court decision. *Ratcliff v. Estelle,* 597 F.2d 474, 477–78 (5th Cir.), *cert. denied,* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). Where the Supreme Court determined that despite some discussion on the merits, the basis for the state court decision was procedural default, it held that review on the merits by the federal courts was also precluded. *Id.* (Judge Roney reviewed the Supreme Court's opin-

ions in *Newman v. Henderson, supra; Francis v. Henderson, supra; Lefkowitz v. Newsome,* 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975); and *Irvin v. Dowd,* 359 U.S. 394, 79 S.Ct. 825, 3 L.Ed.2d 900 (1958).)

In *Ratcliff* itself, Judge Roney found that the state trial court clearly ruled on procedural grounds, but then went on to briefly discuss the merits of the claims. 597 F.2d at 478. Judge Roney speculated that the trial court had done so in order to dispose of all the issues in the event it was in error on the procedural default. *Id.*

The state appellate court affirmed without opinion. Judge Roney held that under these circumstances it was reasonable to interpret this affirmance as a holding of procedural default for three reasons. First, the trial court opinion regarding procedural default was unequivocal. Nothing in the subsequent discussion of the merits compromised that holding. Second, it is well settled that a court will not reach a constitutional issue if it can rest its decision on nonconstitutional grounds. And third, the trial court correctly applied the state law on the procedural issue. *Id.* Therefore, having concluded that the state court correctly applied its procedural default rule, Judge Roney held that the district court's dismissal of the petition was correct. *Id.*

Other federal appellate courts also recognize that a state's procedural default policy should be enforced where that policy is a substantial basis for the state court ruling or where the merits have been addressed only as an alternative holding. *See e.g., United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435 (3d Cir.1982); *Martinez v. Harris,* 675 F.2d 51 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 109, 74 L.Ed.2d 97 (1982); and *Hockenbury v. Sowders,* 620 F.2d 111 (6th Cir.1980), *cert. denied,* 450 U.S. 933, 101 S.Ct. 1395, 67 L.Ed.2d 367 (1981). *See also Grizzell v. Wainwright,* 692 F.2d at 725 (where state court did not enforce procedural default even as an *alternative ground* of decision, federal court must also address merits).

In the instant case, the sole comment which Hall points to as a waiver of the

procedural default policy is the Florida Supreme Court's fleeting comment after reviewing the merits of Claims I and J that:

> Hall presented the trial court with numerous other points [Claims K, L, N, O, Q, R, S, and T] regarding his sentencing proceeding. As did the trial court, we find no merit to them.

*Hall v. State,* 420 So.2d at 874. This Court finds it unreasonable to interpret this comment as a rejection and waiver of the trial court's enforcement of the procedural default policy and a holding on the merits of these claims.

On the contrary, in applying Judge Roney's analysis in *Ratcliff* to the instant case, the court must conclude that Florida enforced its procedural default rule as to these claims. First, both Florida courts unequivocally held that Hall waived Claims K, N, O, Q, R and S due to procedural default. Exhibit "B" 601–603. Judge Booth's discussion of the merits of these claims probably was intended to foreclose the necessity of future evidentiary hearings on the merits of these claims in anticipation of further efforts by Hall to overturn his conviction—as by a state habeas claim of ineffective assistance of appellate counsel, which subsequently did materialize. It cannot be said that his cursory discussion of the merits in the interests of judicial economy compromises his holding of preclusion as to these claims. To rule otherwise would be to dictate the form of a state court's determination by choosing not to follow a state ruling of procedural default if the state court also expresses its views on federal constitutional law. This is unacceptable. *United States ex rel. Caruso v. Zelinsky,* 689 F.2d 435 (3d Cir.1982). *Cf. Martinez v. Harris,* 675 F.2d 51, 54–55 (2d Cir.1982) (it is sound appellate practice for a state prosecutor to argue in the alternative).

Although Judge Booth did not specifically hold Claims L and T precluded, this is not a case where the state appellate court affirmed without opinion. On the contrary, the Florida Supreme Court specifically held, as this Court has noted throughout this Opinion, that those claims which could have and should have been raised on direct appeal were precluded from collateral review. Since Claims K, L, N, O, Q, R, S, and T could have been but were not raised on direct appeal, nor discussed on their merits, all of them must be considered to have been unequivocally held precluded by the Florida Supreme Court.[10]

Secondly, there is no reason to suppose that the Florida Supreme Court intended to reach a federal constitutional issue when it did not have to.

Third and last, the Florida courts correctly applied their procedural default rule. *See Raulerson v. State,* 420 So.2d 567 (Fla. 1982).

This Court holds, therefore, that failure to comply with the State of Florida's procedural default rule was a substantial basis of the Florida Supreme Court's denial of Claims K, N, O, Q, R, S, and T. Finding no excusable cause for these defaults,[11] this Court will dismiss these claims with prejudice.

### Claim M

The remarks complained of in federal claims M(1)(b) and (c) were not raised on appeal nor discussed by the Florida Supreme Court in its denial of the 3.850 motion. Therefore, consistent with this

---

**10.** As to Claim R, *see Dietz v. Solem,* 640 F.2d 126, 131–32 n. 1 (8th Cir.1981) (any discussion of merits of a claim where no objection at trial must be dicta since it would be based on a hypothetical assumption); as to Claims L and T, *see United States ex rel. Caruso v. Zelinsky,* 689 F.2d at 439–440 (claims precluded from federal review where state trial court ruled on merits, but state appellate court in affirming found trial court properly denied the claims on both procedural and substantive grounds); as to Claims N, O, Q, R, and S *see Hockenbury v.*

*Sowders,* 620 F.2d 111, 115–116 (6th Cir.1980) (substantial basis of state court's decision was procedural default where court held claim precluded and merits review only cursory). *See generally Zelinsky, supra* at 439–440 for a discussion of why state court reliance on a procedural rule as an alternate holding should suffice to implicate the procedural default doctrine.

**11.** *See supra* notes 4–6 and accompanying text.

Court's prior analysis of the Florida Court's holding,[12] these claims are precluded from federal review absent cause and prejudice. Finding no excusable cause for Hall's procedural default,[13] they will be dismissed with prejudice.

▮ Federal claim M(1)(a)—improper prosecutorial remarks during sentencing argument—was raised on direct appeal as Issue V. In its brief on appeal, the state argued procedural default. *See* Exhibit "A," Appellee's Brief 43. The Florida Supreme Court apparently agreed, as it did not address the merits of this claim, and it remarked in a footnote that this objection was not raised at trial. *Hall v. State,* 403 So.2d at 1324 n. 4. Nevertheless, when this issue was again raised by motion to vacate, the state asserted, Exhibit "B" 137, and Judge Booth found, Exhibit "B" 601, that it had been resolved against Hall on direct appeal. It is unclear whether the Florida Supreme Court held it precluded or exhausted on appeal.[14] Therefore, this Court will consider it on the merits later in this Opinion.[15]

### Claim P

Claim P(2) was raised on direct appeal as Issue V and was denied. *Hall v. State,* 403 So.2d at 1324–25. It will, therefore, be considered later in this Opinion.

Claim P(1), however, was never raised on direct appeal. *See* Exhibit "A," Appellant's Brief 37–39. Although the State did not

point this out in its brief on appeal of the 3.850 motion,[16] *See* Attachment # 2 to Supplemental Memorandum of Law filed herein on February 28, 1983, at 3, the Florida Supreme Court did not reach the merits and this Court finds that the most reasonable interpretation of this silence is that the court held that Claim P(1) was precluded from collateral review.[17] Finding no excusable cause for Hall's procedural default,[18] this Court will likewise not consider the merits of Claim P(1) and will dismiss it with prejudice.

### Claim U

Claim U was not presented on direct appeal, but raised initially by 3.850 motion. It was considered on the merits by the Florida Supreme Court and denied.[19] *Hall v. State,* 420 So.2d at 874. This Court will consider it herein.

### Claim V

Claim V was raised by state habeas. The Florida Supreme Court consolidated the habeas petition with the appeal on the motion to vacate and resolved the issue against Hall on the merits. 420 So.2d at 874. This Court will consider the merits herein.

### Claims W, X and Y

These claims were expressly held precluded by Judge Booth. Exhibit "B" 604. The Florida Supreme Court also enforced the

---

12. *Supra* note 3 and accompanying text.

13. *See supra* notes 4–6 and accompanying text.

14. This ambiguity results from the fact that the Supreme Court did not consider the claim on its merits, but arguably the claim could fit into either of the remaining categories—claims raised on appeal or claims precluded.

15. Where the state does not raise the issue of procedural default and the state court holding is ambiguous, no presumption of preclusion inheres. *See Ulster County Court v. Allen,* 442 U.S. 140, 152, 99 S.Ct. 2213, 2222, 60 L.Ed.2d 777 (1979).

16. The state by Supplemental Response, filed herein on February 28, 1983, now argues that this claim is precluded.

17. *Ulster County* does not mandate a different result as Claim P(1), unlike Claim M(1)(a), was not raised on direct appeal. Therefore, under the Florida Supreme Court's categorization of the 3.850 claims, Claim P(1) must be put in the precluded category.

18. *See supra* notes 4–6 and accompanying text.

19. The Florida Supreme Court may well have found a deliberate by-pass and have refused to consider this claim on appeal of the 3.850 motion since Hall's counsel refused to present evidence on this claim at the trial court's evidentiary hearing on the motion. *See Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).

procedural default rule and did not address their merits. Finding no excusable cause for the procedural default,[20] this Court holds that they are precluded from federal review and will dismiss Claims W, X, and Y with prejudice.

### Claim Z

█ This claim was exhausted by way of a class-action state habeas petition of which petitioner was a member, and was resolved against the class. *See Brown v. Wainwright,* 392 So.2d 1327 (Fla.), *cert. denied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981). Accordingly, it will be considered herein.

### Summary

In summary, this Court finds the following to be the procedural posture of the twenty-six federal claims raised by the instant habeas petition:

*Precluded Claims:* D; E; F; G; H(2)(a), (c); H(3)(b); K; L; M(1)(b), (c); N; O; P(1); Q; R; S; T; W; X; Y

*Exhausted Claims:*

1) By direct appeal: B; C; H(1)(a)–(d); H(2)(b); H(3)(a); M(1)(a); P(2)

2) By 3.850 motion: A; I; J; U

3) By state habeas petition: V; Z

## IV. MERITS OF EXHAUSTED CLAIMS

*By Direct Appeal*

### Claim B

Hall claims that his trial was rendered fundamentally unfair in violation of the fifth and fourteenth amendments by the admission of evidence of a collateral offense. He contends that this evidence dominated his trial for the instant conviction resulting in such severe prejudice as to violate his rights under the fifth, sixth and fourteenth amendments to the United States Constitution.

█ It is fundamental that federal courts possess only limited authority to consider state evidentiary rulings in a habeas proceeding by a state prisoner. *Burgett v.*

**20.** *See supra* notes 4–6 and accompanying text.

*Texas,* 389 U.S. 109, 113–14, 88 S.Ct. 258, 260–61, 19 L.Ed.2d 319 (1967). A violation of state evidentiary rules does not in and of itself invoke Section 2254 habeas corpus relief. *Bryson v. State of Alabama,* 634 F.2d 862, 864–65 (5th Cir.1981). The federal courts' inquiry is limited to an examination of whether federally guaranteed rights have been violated. *Nordskog v. Wainwright,* 546 F.2d 69, 72 (5th Cir.1977). Only where the admission of certain evidence is so prejudicial as to constitute a denial of fundamental fairness will federal courts intervene. *Id.*

█ This Court is bound by a state court's determination of its own law. *Hall v. Wainwright,* 493 F.2d 37, 39 (5th Cir. 1974). Under Florida law, evidence of the commission of "collateral crimes" is admissible if relevant to an issue being litigated. Identity is recognized as a legitimate relevant issue. *Williams v. State,* 110 So.2d 654 (Fla.1959). The Florida Supreme Court found this evidence relevant to the issue of identity and to show the general context of the Hurst murder, *Hall v. State,* 403 So.2d at 1324. The evidence was, therefore, properly admitted under Florida law at Hall's trial.

[16] In the context of the entire trial of this case, this Court cannot conclude that the evidence of the collateral crime was so overwhelmingly prejudicial that the state court nonetheless committed error in admitting it. After reviewing the entire transcript, this Court cannot conclude that this evidence so dominated the trial as to render it fundamentally unfair.

Accordingly, this claim will be denied.

### Claim C

This claim raises the issue of whether the evidence was sufficient to convict Hall of first degree murder. Hall contends that there was not sufficient evidence to prove beyond a reasonable doubt that he intended to kill Karol Hurst. Therefore, he contends that his conviction and death sentence de-

nied him due process and subjected him to cruel and unusual punishment in violation of the fifth and fourteenth amendments.

Hall and Mack Ruffin were indicted for the murders of Karol Hurst and Deputy Sheriff Lonnie Coburn. Hall was tried separately for the Hurst murder.

On February 21, 1978, Mrs. Hurst, a 21-year-old housewife who was seven months pregnant, left a Pantry Pride checkout counter in Leesburg, Florida, at 3:00 p.m. Her body was found at 3:00 p.m. on February 22, 1978, in Sumter County. She had been shot and sexually assaulted. In a confession introduced at trial, Exhibit "A," Transcript of Trial (Tr.) 528–35, Hall told a deputy sheriff how, on the previous day, he and Ruffin had sat in that Pantry Pride parking lot looking for a car to use in committing a robbery when he, Hall, accosted Mrs. Hurst and forced her into her car. Hall slid in behind the steering wheel and drove while Ruffin followed in his own car. They stopped in a wooded area where, according to Hall, Ruffin beat, sexually assaulted, and shot Mrs. Hurst.

At trial, the state presented the case to the jury on the theory that Hall and Ruffin did everything together. They planned the robbery together and drove together to the Pantry Pride parking lot to obtain a car. Hall drove the Hurst car to the wooded area while Ruffin followed in his own car. The two were together at the site of Mrs. Hurst's assault and death, at the convenience store where their actions drew suspicions, and when they fled in the stolen car.[21]

This evidence is legally sufficient to withstand attack under Section 2254 if "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

In order for Hall to be found guilty of first degree murder under Florida law, the state must prove that he either pulled the trigger with a "premeditated design to effect the death of the person killed," Fla. Stat. § 782.04(1)(a) (1973) or, that he was a principal to the crime of first degree murder even if he did not physically pull the trigger. Fla.Stat. § 777.011 (1977) states:

[w]hoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.

■ An aider and abettor is responsible for all acts committed by his accomplice in furtherance of the criminal scheme. *Foxworth v. State*, 267 So.2d 647 (Fla.1972), *cert. denied*, 411 U.S. 987, 93 S.Ct. 2276, 36 L.Ed.2d 965 (1973).

■ The evidence in this case shows that either Hall or Ruffin killed Mrs. Hurst. A premeditated design to effect the death of a human being is a "fully formed and conscious purpose to take human life." *McCutchen v. State*, 96 So.2d 152, 153 (Fla. 1957). As the issue of premeditation necessarily involves the state of mind, circumstantial evidence must be relied upon by the jury in resolving the issue. *See Spinkellink v. State*, 313 So.2d 666, 670 (Fla.1975), *cert. denied*, 428 U.S. 911, 96 S.Ct. 3227, 49 L.Ed.2d 1221 (1976). Facts and circumstances from which a jury may lawfully infer premeditation include, among other things, the method by which death is effected, the nature and manner of the wounds inflicted and the actions of the accused prior to and subsequent to the homicide. *Larry v. State*, 104 So.2d 352 (Fla.1958).

**21.** This summation of the facts comes from *Hall v. State*, 403 So.2d at 1323. *See Ruffin v. State*, 420 So.2d 591, 595 (Fla.1982), for Justice McDonald's dissent in which he would have reduced Ruffin's conviction because the evidence showed Hall had instigated the crime and killed Mrs. Hurst.

■ There is ample evidence in the record of this case for this Court to hold as a matter of law that a rational trier of fact could have found beyond a reasonable doubt that Mrs. Hurst was killed with a premeditated design by either Hall or Ruffin to avoid subsequent identification of them by her. The evidence is also legally sufficient for a jury to find that the other was an aider and abettor and, therefore, a principal to the first degree murder.

Accordingly, this claim will be denied.

### Claim H

Claim H charges that the prosecutor improperly commented on Hall's failure to testify, appealed to the sympathy of the jury and argued matters not supported by any evidence. Hall alleges that these comments denied him due process of law and deprived him of a reliable determination of guilt in a capital trial as required by the sixth, eighth, and fourteenth amendments to the federal constitution.

As noted above, only the statements objected to in claims H(1)(a)–(d), H(2)(b) and H(3)(a) are properly before this Court.[22] These claims will be considered individually and then in their cumulative effect in the context of the entire trial. *See Cronnon v. State of Alabama,* 587 F.2d 246, 251 (5th Cir.), *cert. denied,* 440 U.S. 974, 99 S.Ct. 1542, 59 L.Ed.2d 792 (1979).

*H(1)(a):*

■ At the beginning of his closing argument, the prosecutor pointed to Hall and said:

Now, first the evidence shows us that this defendant sitting right over there, *and he's asleep,* . . . . [emphasis added].

Exhibit "A," Tr. 604.

Hall contends that this was an improper comment on his failure to testify. It is

reversible error to do so, *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *see also United States v. Brown,* 546 F.2d 166 (5th Cir.1977), but this Court cannot agree that the prosecutor intended to do so. *See Frank v. Blackburn,* 605 F.2d 910, 914 (5th Cir.1979), *vacated in part on other grounds,* 646 F.2d 873 (5th Cir.1980), *modified,* 646 F.2d 902 (5th Cir.1981). This was not a comment on Hall's failure to testify. *Accord Hall v. State,* 403 So.2d at 1324. Rather, it was a comment on Hall's general demeanor. While this Court agrees with the Florida Supreme Court that the comment may have improperly implied a lack of interest in his own trial, *id.,* it was not of such a character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *Frank v. Blackburn,* 605 F.2d at 914. Therefore, this comment did not render the trial constitutionally defective.

*H(1)(b)(c) and (d):*

■ These remarks,[23] Hall asserts, also improperly referred to his failure to testify. Hall maintains that the remarks challenged him to submit his own version of the facts of the crime, thereby reinforcing the fact that he did not testify during the trial.

The Court, however, agrees with the State of Florida that these remarks were well within proper prosecutorial advocacy and merely urged the jury to reject the defense theory that Hall was not culpable for the actions of Ruffin. These remarks were not comments upon Hall's failure to testify and did not, therefore, render Hall's trial fundamentally unfair.

*H(2)(b):*

Hall alleges that this comment[24] impermissibly appealed to the sympathy of the

---

**22.** *See supra* pp. 1230–1231.

**23.** The prosecutor said:

(b) So what happens then? Here we come into something that's important. Who says that Ruffin killed her? I wasn't there. Karol Hurst is dead. Appendix "A," Tr. 607.
(c) This man admits all of it. The only thing he is saying is, he is saying, "I did everything,

but I didn't kill her, I didn't have anything to do with that. That's the big thing, that's the biggie, that's what he is saying." Appendix "A," Tr. 609.
(d) Now, this is a tragic case. We have a deceased woman, she can't testify. Appendix "A," Tr. 610.

**24.** "Now, this is a tragic case. We have a deceased woman; she can't testify. I don't

jury to his detriment. The Court does not agree.

In reviewing prosecutorial remarks for prejudice to a state defendant, a federal court inquiry is limited to whether the remarks were so prejudicial as to render the trial fundamentally unfair as a matter of federal constitutional law. *Houston v. Estelle,* 569 F.2d 372 (5th Cir.1978). It is not enough that the prosecutor's remarks were undesirable or even universally condemned. *Cobb v. Wainwright,* 609 F.2d 754 (5th Cir. 1980). A defect of constitutional proportion is not to be found in any but egregious cases. *Houston v. Estelle,* 569 F.2d at 382.

Several factors should be considered in evaluating prosecutorial misconduct in a habeas case: (1) the degree to which the challenged remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether they are isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the competent proof to establish the guilt of the accused. *Hance v. Zant,* 696 F.2d 940, 950 n. 7 (11th Cir.1982). Application of these factors leaves no doubt that the challenged remark does not rise to the level of constitutionally improper conduct, and this Court so finds.

*Claim H(3)(a):*

Hall complains that the prosecutor referred on more than one occasion to items not in evidence. While the process of constitutional line-drawing as to prosecutorial misconduct may be imprecise, *Donnelly v. DeChristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), there can be no doubt that these remarks do not state a constitutional claim requiring relief under Section 2254.

*Cumulative Impact of Remarks*

Having reviewed each challenged remark and finding them within the constitutional parameters of prosecutorial advocacy, the Court has considered their cumulative impact in the context of the entire trial, *Cobb v. Wainwright,* 609 F.2d at 755 n. 1, and finds that the asserted errors are not of constitutional magnitude. *Houston v. Estelle,* 569 F.2d at 377–78 n. 8. Accordingly, claims H(1)(a)–(d), H(2)(b) and H(3)(a) will be denied.

### Claim M(1)(a)

This claim also challenges a remark by the prosecutor. This remark occurred during closing argument at the end of the penalty phase of the trial.[25] Although the interjection by the prosecutor of his personal opinion on the lack of mitigating circumstances in Hall's case might be reversible error under Florida law, *see Tyson v. State,* 87 Fla. 392, 100 So. 254 (Fla.1954), and even reversible error in an appeal from a federal criminal case, *United States v. Corona,* 551 F.2d 1386, 1389 (5th Cir.1977), it may not be sufficient error to mandate relief under Section 2254. A prosecutor's conduct may be improper without being unconstitutional. *Hance v. Zant,* 696 F.2d 940, 951 (11th Cir. 1982).

In the instant case, the Court agrees with the State of Florida that the remark is merely a comment on the weakness of the evidence in mitigation. But even if it were not, this remark would not rise to the level of constitutional error under *Hance.*

Accordingly, this claim will be denied.

### Claim P(2)[26]

Hall asserts that the trial court failed to consider relevant mitigating circumstances thereby rendering his death sentence arbitrary and capricious in violation of the eighth and fourteenth amendments. The basis for this claim apparently is that certain of Hall's own testimony during the

---

know how quick death comes to people; I know some die hard; some die easy. It comes to all of us sooner or later." Appendix "A," Tr. 610.

**25.** "Ladies and gentlemen of the jury, with all due sincerity, I don't see any mitigation in this particular case." Appendix "A," Tr. 693.

**26.** P(1) has been previously determined to have been precluded. *Supra* p. 1234.

penalty phase [27] was, as a matter of law, sufficient to prevent the imposition of the death penalty. *Cf.* Fla.Stat. § 921.141(6)(b) and (f) (1977).

■ This, of course, is not the law. The sentencing judge must consider in mitigation any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant offers as a basis for a sentence less than death. *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982). It is clearly within the province of the sentencer to determine the weight to be given to evidence of relevant mitigating circumstances. *Id.* 102 S.Ct. at 875. In some instances, such evidence may properly be given little weight. *Id.* 102 S.Ct. at 876.

■ The fact that Judge Booth did not find that the evidence of Hall's ingestion of drugs and alcohol was sufficient to substantiate a finding of mitigation under the statutory factors [28] does not indicate that he gave the evidence no weight at all. The law only requires that the defendant be permitted to present evidence in mitigation, and requires the sentencer to listen. *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). This Court concludes as a matter of constitutional law that the trial court could have reasonably found that this testimony did not establish the statutory mitigating factors.

Accordingly, this claim must be denied.

*By 3.850 Motion:*

**27.** A [Hall] I was high when this taken place, I wasn't drunk, I was high, and I'm sorry to say I really didn't want no one to get killed in this case, but it happened this way. I'm sorry it happened this way.

\* \* \* \* \* \*

Q All right. Did he do anything to indicate whether or not he understood what you were saying to him?
A He said he did, or he indicated that he did.

Q In what way did he indicate he understood?
A I don't recall; he said, "Yeah," or something like that.

Q All right. Will you describe, please, the lighting and weather conditions at the time?
A It was fairly chilly. It was pretty cold. It was clear, it wasn't raining. The only light that

*Claim A*

Hall claims that he was not present during a portion of the jury selection and certain other times during trial and that his absence abrogated his fundamental constitutional right to be present at all stages of a criminal trial. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353 (1970); *Francis v. State,* 413 So.2d 1175 (Fla.1982) (fundamental right to be present during jury selection).

The Florida Supreme Court found that Hall was present during the actual voir dire and selection of the jury. *Hall v. State,* 420 So.2d at 873. The record supports this finding of fact, Appendix "A," Tr. 1–248, and this Court defers to it. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Hall, however, urges that his fundamental rights were violated by his absence during (1) the general qualification of jurors; (2) a discussion on various legal motions, Appendix "A," Tr. 69–72; (3) his counsel's stipulation to the excusal of an alternate juror; (4) the marking for identification of an exhibit; (5) the release of the remaining alternate juror at the end of the guilt phase; (6) the trial court's discussion with the jury their request for certain items of evidence during deliberations; and (7) the trial judge's dismissal of the jury.

■ The trial court and the Florida Supreme Court found *Francis* distinguishable

I recall having at the time was the light from the Lykes-Pasco Packing Company.
Q How was the person dressed?
A He had on a pair of dark checked slacks, and no shirt and no shoes.
4. None of the prosecutor's remarks were objected to at the time.

A That's right. All right, also, if I had been … I was high, like I said, they had it in the paper, we had been smoking some dope and drunk some beer and bought a pint of brandy.
Q So you had been smoking dope?
A Right, that night.
Q What kind of dope were you smoking?
A Some kind of pot, grass.
Q And some pills, what kind of pills were you taking?
A I got some the pills from Ruffin.

**28.** Appendix "A," Record on Appeal 351.

in that Hall was present at all critical stages of the proceedings and was able to consult with his counsel. This Court agrees. The defense agreed that prior move could take place in his absence, Appendix "A," Tr. 99–101, and even in the absence of such agreement there would be no constitutional infirmity in this procedure. *Cf. Howard v. Kentucky,* 200 U.S. 164, 26 S.Ct. 189, 50 L.Ed. 421 (1906). Hall's absence during the discussion of legal motions is not a constitutional violation. *United States v. Gradsky,* 434 F.2d 880 (5th Cir.1970); *Cf. Snyder v. Massachusetts,* 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934). Likewise, none of the other absences occurred at times which would jeopardize Hall's right to due process of law; nor did they result in any injury to his substantial rights. *See Howard v. Kentucky, supra.*

Accordingly, this claim will be denied.

### Claim I

■■■ Hall claims here that because the Florida Supreme Court reduced his sentence for the murder of Coburn from first to second degree murder, *Hall v. State,* 403 So.2d 1319 (Fla.1981), the Coburn conviction should not have been used to show the aggravating circumstance of prior criminal history. Hall alleges that this error deprived him of his rights under the eighth amendment to a fair and reliable determination of his penalty.

This claim is without merit, however, as the conviction itself, regardless of the degree, still meets the statutory criteria for an aggravating circumstance. Fla.Stat. § 921.141(5)(b) merely requires that the defendants have been "previously convicted of another capital felony or of a felony involving the use or threat of violence to the person." Furthermore, Hall's 1968 conviction for assault with intent to commit rape was before the trial court and could have been in and of itself sufficient to find the existence of this aggravating circumstance.

Accordingly, this claim will be denied.

### Claim J

Hall claims the death penalty shouldn't have been imposed on him because there

was no proof that he killed or intended to kill. *Enmund v. Florida,* —— U.S. ——, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982) (death penalty unconstitutional where the conviction for first degree murder is for a homicide committed during the perpetration of a felony without proof of intent to kill).

*Enmund,* however, is inapplicable to the facts of this case. In *Enmund,* the defendant was not present at the scene and the killing was not found to be premeditated.

In the instant case, this Court has already determined that the evidence was sufficient to permit the jury to find the elements of first degree murder, including intent, as to Hall himself and beyond any reasonable doubt.[29] Therefore, this claim is without merit and will be denied.

### Claim U

This claim raises the issue of ineffective assistance of trial counsel. Hall charges his counsel with twenty-six counts of ineffective assistance during the guilt and sentencing phases of the trial. The first allegation—ineffective assistance during jury selection—contains eleven specific instances.

The Court notes initially, that, at the state evidentiary hearing on the 3.850 motion, Hall had both of his trial attorneys present, but chose not to question them. Hall's 3.850 counsel, in fact, refused to submit any evidence in support of this claim. He stated for the record that, "I choose to [not put on any testimony] as a matter of tactics at this time." Appendix "B," 536. As the Florida Supreme Court noted in its review of these claims, Hall "evidently [chose] to let a cold record speak for itself." *Hall v. State,* 420 So.2d at 874. Judge Booth in his order denying the ineffective trial counsel claim, specifically found that Hall deliberately chose to offer no evidence from his trial counsel for either tactical or strategical reasons, Appendix "A," Record on Appeal (R) 603, and found that the allegation failed for lack of any proof under the standard of *Knight v. State,* 394 So.2d 997 (Fla.1981).

---

**29.** See discussion of Claim "C" *supra* pp. 1235–1237.

A federal habeas petitioner must make a showing of two elements in order to obtain an evidentiary hearing based on the assertion that material facts were not adequately developed at the state-court proceeding: first, that a fact pertaining to his federal constitutional claim was not adequately developed at the state-court hearing and that the fact was "material" or crucial to a fair, rounded development of the material facts; and, second, that failure to develop that material fact at the state's proceeding was not attributable to petitioner's inexcusable neglect or deliberate bypass. *Thomas v. Zant,* 697 F.2d 977, 986 (11th Cir.1983).

In the instant case, counsel's testimony concerning trial strategy is certainly a material fact to the allegation of ineffective assistance of counsel. *Washington v. Strickland,* 693 F.2d 1243, 1254 (5th Cir. 1982) (Unit B *en banc*). However, the record herein contains specific findings by Judge Booth of deliberate bypass of the state-court opportunity to develop that material fact, and an admission by Hall's counsel that he bypassed his opportunity for tactical reasons. This Court finds as a matter of law, therefore, that Hall "deliberately bypassed" his opportunities for an evidentiary hearing on this point. A state prisoner who knowingly and deliberately bypasses state procedures intentionally relinquishes known rights. *Fay v. Noia,* 372 U.S. 391, 438–39, 83 S.Ct. 822, 848–49, 9 L.Ed.2d 837 (1963); *Thomas v. Zant,* 697 F.2d at 989.

Furthermore, even if Hall had not refused to adduce evidence in support of his claim, Judge Booth made detailed and exhaustive findings of fact on the competency of Hall's trial counsel, which this Court may, within its discretion, adopt without affording Hall any further opportunity to produce evidence. *See Ford v. Strickland,* 696 F.2d at 825 n. 1 (Tjoflat, J., concurring). Therefore, no federal evidentiary hearing was required on this claim.[30] *Schultz v. Wainwright,* 701 F.2d 900, 901 (11th Cir. 1983).

In reviewing ineffective assistance of counsel claims, the courts do not sit to second guess considered professional judgments with the benefit of 20/20 hindsight. *Washington v. Watkins,* 655 F.2d 1346 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982). It is well settled that the standard to be applied in evaluating ineffective assistance of counsel claims is whether counsel was "reasonably likely to render and did render reasonably effective assistance of counsel." *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), *adhered to en banc,* 289 F.2d 928 (5th Cir.), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961). Whether counsel has rendered adequate assistance is a mixed question of law and fact that requires the application of legal principles to the historic facts of the case. *Cuyler v. Sullivan,* 446 U.S. 335, 341–42, 100 S.Ct. 1708, 1714–15, 64 L.Ed.2d 333 (1980); *Young v. Zant,* 677 F.2d 792, 798 (11th Cir.1982). The assistance rendered must be evaluated from the perspective of counsel, taking into account all the circumstances of the case, but only as those circumstances were known to counsel at that time. *Proffitt v. Wainwright,* 685 F.2d 1227, 1247 (11th Cir.1982). Even where an attorney's strategy may appear wrong in retrospect, a finding of constitutionally ineffective representation is not automatically mandated. *Baty v. Balkcom,* 661 F.2d 391, 395 n. 8 (5th Cir.1981), *cert. denied,* 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982).

The Court notes again that Judge Booth made detailed findings of fact as to the level of competency of Hall's trial counsel. After reciting his general familiarity with these attorneys' work—both in the instant case and in general—Judge Booth stated that he "has always found both men to be well prepared, able, thorough, effective and competent attorneys." Appendix "A," R. 603. Furthermore, he noted that "[i]n their capacity as Assistant State Attorneys they both assisted [the prosecutor in this case] in murder cases thus acquiring a wealth of background knowledge regarding that pros-

---

**30.** Hall's counsel never moved for an evidentiary hearing on this claim, but, even if he had, the Court would have denied the motion as to the claims of ineffective assistance of counsel for the foregoing reasons.

ecutor's tactics and strategies which furnished each one with one unique advantage which few other counsel have. *Id.* In its review of the 3.850 motion, the Florida Supreme Court affirmed these findings of fact by the trial court as to the effectiveness of counsel at Hall's trial. 420 So.2d at 875. This Court defers to the state court's factual findings as to the training, experience, and general competence of Hall's counsel. *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981).

Furthermore there is nothing in the record which would, as a matter of law, support Hall's claim of constitutionally defective trial representation.

### ·Guilt Phase

The record shows that trial counsel obtained two changes of venue, Appendix ·"A," R. 13–17; R. 205–207, a severance from the co-defendant, *id.* at 11; and filed a Motion to Suppress Admissions, *id.* at 217–18. The record indicates that defense counsel were vigilant during jury selection process, Appendix "A," Tr. 1–242, and certainly not below sixth amendment standards. Although present counsel suggests many things which could have been done differently during jury selection, this is insufficient to mandate relief under Section 2254. Hall had a right to reasonably effective counsel, not errorless counsel. *Adams v. Balkcom,* 688 F.2d 734 (11th Cir.1982); *Washington v. Watkins,* 655 F.2d 1346, 1367 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982).

### Sentencing Phase

■ The allegation that counsel were ineffective because they failed to present any evidence in mitigation during the sentencing phase is also without merit. Hall himself testified in an effort to persuade the jury that Ruffin was the instigator of the crime, *id.* at 660–65, and counsel argued Hall's cooperation with police in mitigation. *Id.* at 695. Furthermore, the decision not to present any other live witnesses is a tactical decision precluding cross-examination of those witnesses which this Court will not

second guess. *Easter v. Estelle,* 609 F.2d 756, 759 (5th Cir.1980).

■ Finally, failure to present any additional evidence at the penalty stage does not constitute *per se* ineffective assistance of counsel. *Stanley v. Zant,* 697 F.2d 955, 962 (11th Cir.1983). Such a strategy may well be based upon a professional assumption as to the likelihood of success of such evidence. When counsels' assumptions are reasonable under all the circumstances, counsel need not present all arguably mitigating factors. *Id.* at 965. In this case, the Court assumes that counsels' assumptions were reasonable as Judge Booth has attested to the general competency of counsel and there is nothing in the record to suggest that these assumptions were not reasonable.

Hall also asserts that his trial counsel did not sufficiently investigate Hall's background, including his mental history and his character. Hall does not, however, proffer any specific evidence of mental disorder or character in support of this claim.

■ While there is a duty to conduct a reasonable pretrial investigation into possible defenses· and theories of mitigation, *Washington v. Strickland,* 693 F.2d 1243 (5th Cir.1982) (Unit B *en banc*), Hall must show not only that no reasonable investigation was conducted, but also that his counsel's ineffectiveness caused actual and substantial prejudice to his case. *Id.*

Furthermore, the scope of counsel's duty to investigate cannot be separated from the rule that counsel is not required to present to the jury any even arguably mitigating evidence that might exist. *Stanley v. Zant,* 697 F.2d at 965. Where counsel decides ·that such evidence would be of little persuasive value, counsel may make a strategic judgment to present less than all possible evidence in mitigation. *Id.*

In the instant case, the claim that Hall's trial counsel did not conduct a reasonable investigation is made only upon "information and belief," and there is nothing in the record which supports it. The failure of Hall to call his trial counsel to testify at the

3.850 hearing was a deliberate bypass of Hall's opportunity to develop facts in support of this claim. Accordingly, it must fail for lack of proof. Hall has not met his burden on the threshold issue of ineffectiveness here. *See id.* at 1250–51.

Hall's allegation that counsel erred in failing to object to the trial judge's instructions allegedly limiting the mitigating circumstances which the advisory jury might properly consider to those in the statute is likewise without merit. The judge not only permitted argument on non-statutory factors (Hall's cooperation), but nothing in his instructions to the jury would require this Court to conclude that a reasonable juror might interpret that instruction to limit consideration of mitigating circumstances to those in the statute. *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979). *Cf. Ford v. Strickland,* 696 F.2d at 812 (finding an almost identical instruction would not be so interpreted by a juror).

▮ The failure to object to this instruction by Hall's counsel did not rise to the level of a sixth amendment violation. Absent such a conclusion, it is "not for federal courts to speculate as to possible reasons for failure to object." *Tyler v. Phelps,* 643 F.2d 1095, 1100 (5th Cir.1981).

A careful review of the entire transcript of the trial reveals that none of the other instances pointed to by Hall justify the conclusion that his trial representation was ineffective. This claim will be denied.

### Claim V

The major argument advanced in support of Hall's claim of ineffective assistance of appellate counsel is their failure to raise the *Lockett* issue—improper limitation of mitigating factors—on appeal. Hall charges that this failure was "inexcusable" due to the trial court's "explicit limitation of consideration of mitigating circumstances."

Having previously found that the trial court did not explicitly limit the jury's consideration to statutory factors,[31] this Court

also concludes that failure to raise this ground on appeal was not error of constitutional magnitude. *See United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982).

Likewise, having determined that Hall's infrequent absences from the courtroom during jury selection did not violate his constitutional rights,[32] appellate counsels' failure to raise this ground on appeal also does not constitute ineffective representation.

The Brief on Appeal shows that appellate counsel raised and vigorously argued five points on direct appeal. Exhibit "A," Brief of Appellant. Contrary to assertions in the instant petition that appellate counsel did not raise the issue of improper prosecutorial appeals to the sympathy of the jury, counsel did so argue. *Id.* at 12–22. Counsel cannot be faulted for not raising every conceivable argument on appeal. For example, Hall's argument that appellate counsels' failure to move for a rehearing based upon the Florida Supreme Court's reversal of the Coburn conviction is patently spurious as the Supreme Court's opinions in the Coburn case and the Hurst case were handed down the same day and the court obviously knew that it had reduced the degree of the Coburn conviction while affirming the Hurst first degree murder conviction. Such allegations cannot successfully support an ineffective assistance of appellate counsel claim.

Finding ample evidence in the record that Hall's appellate counsel rendered "reasonably effective assistance of counsel," this Court will deny this claim.

### Claim Z

Hall claims that his rights under the fifth, sixth, eighth, and fourteenth amendments have been abrogated by the Florida Supreme Court's review of *ex parte,* non-record information prior to their appellate review of his death sentence. This claim was resolved against Hall in *Brown v. Wainwright,* 392 So.2d 1327 (Fla.), *cert. de-*

---

**31.** See discussion of Claim "U" *supra* pp. 1240–1243.

**32.** See discussion of Claim "A" *supra* pp. 1239–1240.

*nied,* 454 U.S. 1000, 102 S.Ct. 542, 70 L.Ed.2d 407 (1981), a class-action state habeas proceeding. Hall's assertion of the same issue here runs afoul of the holding of the Eleventh Circuit that the Supreme Court of Florida did not rely on that non-record material in the review of Hall's appeal.[33] *Ford v. Strickland,* 696 F.2d at 811. *See also Brown,* 392 So.2d at 1333.

For the foregoing reasons, it is

ORDERED:

1. That Claims D; E; F; G; H(2)(a), (c); H(3)(b); K; L; M(1)(b), (c); N; O; P(1); Q; R; S; and T; W; X; Y raised in the Petition for Writ of Habeas Corpus by a Person in State Custody, filed herein on September 30, 1982, are dismissed with prejudice.

2. That Claims A; B; C; H(1)(a)–(d); H(2)(b); H(3)(a); J; M(1)(a); P(2); U; V; and Z raised in the Petition for Writ of Habeas Corpus by a Person in State Custody, filed herein on September 30, 1982, are denied.

---

33. There has been no allegation that Hall's case was treated differently from the other petitioners in *Brown. See Ford v. Strickland,* 696 F.2d at 811.