733 F.2d 766
 Freddie Lee HALL, Petitioner-Appellant,
v.
Louie L. WAINWRIGHT, Secretary, Florida Dept. of Offender
Rehabilitation; Richard Dugger, Superintendent of Florida
State Prison at Starke, Florida; and Jim Smith, Attorney
General of the State of Florida, Respondents-Appellees.
 No. 83-3563.
 United States Court of Appeals,
Eleventh Circuit.
 May 16, 1984.
 
 Edward S. Stafman, Tallahassee, Fla., for petitioner-appellant.
 Robert J. Landry, Asst. Atty. Gen., Tampa, Fla., for respondents-appellees.
 Appeal from the United States District Court for the Middle District of Florida.
 Before HILL and HATCHETT, Circuit Judges, and ALLGOOD*, District Judge.
 PER CURIAM:
 
 
 1
 The appellant, Freddie Lee Hall, appeals the district court's denial of his application for federal habeas corpus relief, 28 U.S.C.A. Sec. 2254 (West 1977).[1] We affirm in part, reverse in part, and remand.Facts
 
 
 2
 On February 21, 1978, Freddie Lee Hall and M.C. Ruffin, decided to steal an automobile for use in robbing a convenience store. They proceeded to Leesburg, Florida, looking for an automobile, and saw Karol Lea Hurst standing beside her automobile in a parking lot outside a convenience store. Hall approached Hurst, forced her into her automobile, and they drove off. Ruffin followed in his automobile. After being driven to a remote area, Hurst was raped, beaten, and murdered by a gunshot to the head from Hall's revolver.
 
 
 3
 Hall and Ruffin proceeded to another convenience store, but after purchasing a few items decided not to commit the robbery. While leaving the store, they encountered a policeman and a fight ensued. Ruffin and Hall fled the scene after murdering the policeman with his own revolver. After a chase, law enforcement officers apprehended Hall and Ruffin. Hall confessed. His confession provided the essential evidence linking him to the Hurst murder. In the confession, Hall stated that Ruffin raped and killed Karol Lea Hurst and that he (Hall) did not kill or rape Hurst. Nevertheless, the jury convicted Hall of first degree murder as a principal to the crime, and the trial court sentenced him to death.[2]
 
 
 4
 The Supreme Court of Florida upheld Hall's conviction and sentence.[3] Subsequently, Hall filed a state habeas corpus petition pursuant to Florida Rule of Criminal Procedure 3.850. The state trial court denied Hall's motion, and the Supreme Court of Florida affirmed.[4]
 
 
 5
 Thereafter, Hall petitioned the United States District Court for the Middle District of Florida for a writ of habeas corpus. The district court denied the writ without an evidentiary hearing.
 
 
 6
 Hall raises nine issues on appeal: (1) Hall argues that his trial was rendered fundamentally unfair in violation of the fifth and fourteenth amendments to the Constitution of the United States by the admission of evidence of collateral offenses, which became a feature of the trial rather than an incident thereto; (2) he contends the prosecution presented insufficient evidence to prove his guilt beyond a reasonable doubt; (3) he argues that the death sentence is improper because the trial court did not require a finding that he had the intent to kill; (4) Hall argues that certain prosecutorial comments during the guilt and sentencing phases of the trial violated his constitutional rights; (5) he contends that the state court's utilization of a previous conviction of first degree murder (which was eventually reduced to second degree murder) for an aggravating circumstance violated the eighth and fourteenth amendments; (6) he claims the trial court failed to weigh mitigating circumstances; (7) Hall contends his absence from the courtroom at various stages of the trial violated his due process rights and his right to confrontation under the sixth and fourteenth amendments; (8) Hall argues the trial court erred in denying him an evidentiary hearing on his ineffective assistance of counsel claims; (9) Hall contends the federal district court erred by holding he had failed to exhaust his state remedies with respect to nineteen claims.
 
 
 7
 (1) Whether Hall's Trial Was Rendered Fundamentally Unfair in Violation of the Fifth and Fourteenth Amendments by the Admission of Evidence of Collateral Offenses.
 
 
 8
 Hall contends the admission of evidence relating to the death of the police officer killed in the struggle outside the convenience store, rendered his trial fundamentally unfair. During Hall's trial, the prosecutor elicited testimony from various witnesses declaring they had seen Hall and Ruffin encounter the police officer outside the convenience store immediately preceding his death. The prosecution also introduced the bullets and revolver used to murder the officer. Hall argues this evidence rendered his trial fundamentally unfair. The state argues that this evidence was properly admitted to show a common scheme or motive of Hall and Ruffin. The Supreme Court of Florida agreed with the state. It held that the collateral crime evidence was "admissible to prove identity (the Hurst murder weapon was found under the police officer's body) and to show the general context in which the criminal action occurred." Hall v. State, 403 So.2d 1321, 1324 (1981). The district court agreed with the state supreme court's ruling.
 
 
 9
 Federal courts possess limited authority to review state evidentiary rulings in a habeas corpus action by a state prisoner. Burgett v. Texas, 389 U.S. 109, 113-14, 88 S.Ct. 258, 260-61, 19 L.Ed.2d 319 (1967); Nordskog v. Wainwright, 546 F.2d 69, 72 (5th Cir.1977). Moreover, "the general rule is that a federal court will not review a trial court's actions with respect to the admission of evidence." Nettles v. Wainwright, 677 F.2d 410, 414 (5th Cir.1982) (citing Lisenba v. California, 314 U.S. 219, 228, 62 S.Ct. 280, 286, 86 L.Ed. 166 (1941)). Before any relief concerning a state evidentiary ruling may be granted, "the violation must rise to the level of a denial of 'fundamental fairness.' " Shaw v. Boney, 695 F.2d 528, 530 (11th Cir.1983); Dickson v. Wainwright, 683 F.2d 348, 350 (11th Cir.1982); Bryson v. Alabama, 634 F.2d 862, 864-65 (5th Cir.1981).
 
 
 10
 In the context of this trial, the admission of evidence relating to the police officer's murder failed to render Hall's trial fundamentally unfair. The evidence related to the identity of Hall as a suspect in the Hurst murder. The evidence also pertained to Hall and Ruffin's common scheme and motive to commit certain crimes that day. Since the evidence was neither a critical nor a highly significant factor in the presecution's case, we cannot say that its admission rendered Hall's trial fundamentally unfair. Shaw, 695 F.2d at 531.
 
 
 11
 (2) Whether Hall Was Convicted and Sentenced to Death Without Sufficient Evidence to Prove His Guilt Beyond a Reasonable Doubt
 
 
 12
 Hall contends that insufficient evidence existed to prove beyond a reasonable doubt that he murdered Hurst. He claims, therefore, that his conviction and death sentence deny him due process and subject him to cruel and unusual punishment in violation of the fifth and fourteenth amendments. The state argues that sufficient evidence existed to convict Hall of first degree murder.
 
 
 13
 In Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the Supreme Court articulated the standard for federal courts reviewing a state court conviction where the defendant contends that evidence is insufficient to prove his guilt beyond a reasonable doubt. The Court stated that the relevant question is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. at 319, 99 S.Ct. at 2789. See also Duncan v. Stynchombe, 704 F.2d 1213, 1214-15 (11th Cir.1983).
 
 
 14
 To convict Hall of first degree murder, the state had to prove either that he had a "premeditated design to effect the death of the person killed," Fla.Stat. Sec. 782.04(1)(a)(1) (West Supp.1983), or that he was a principal in the first degree to the murder. Fla.Stat. Sec. 777.011.[5] If the jury found that Hall had a premeditated design to kill Hurst or aided and abetted Ruffin in the killing of Hurst, it was authorized to find Hall guilty of first degree murder and recommend a sentence of death.
 
 
 15
 In viewing the evidence in the light most favorable to the prosecution, we find that the evidence establishes that Hall either had a premeditated design to kill Hurst or aided and abetted in her murder. Hall abducted Hurst and drove her to the site where she was killed with his revolver. Her personal belongings were found in the automobile in which Hall attempted to escape. A rational trier of fact could have found that Hall either intended to kill Hurst or aided and abetted in her murder. Hall's conviction and death sentence does not violate the standard enunciated in Jackson v. Virginia.
 
 
 16
 (3) Whether Hall's Death Sentence is Unconstitutional Because the State has Failed to Prove Hall Had the Intent to Kill
 
 
 17
 Citing Enmund v. Florida, 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982), Hall contends his sentence of death is unconstitutional because no proof existed that he killed or intended to kill. In Enmund, the Supreme Court held that the eighth amendment prohibits imposition of the death penalty on an individual who neither took life, attempted to take life, intended to take life, or intended to utilize lethal force. Enmund, 458 U.S. at 797, 102 S.Ct. at 3376, 73 L.Ed.2d at 1151. While we do not dispute Hall's contention that Enmund stands for the proposition that an accused may not be sentenced to death absent proof that he killed, attempted to kill, intended to kill, or intended to use lethal force, we find that evidence existed to support Hall's death sentence.
 
 
 18
 In determining whether a death sentence is unconstitutionally imposed, we must look to the individual culpability of the accused. Enmund, 458 U.S. at 799-01, 102 S.Ct. at 3377-78, 73 L.Ed.2d at 1153-54; Ross v. Hopper, 716 F.2d 1528, 1529 (11th Cir.1983). Hall's personal culpability is far more flagrant than that of the accused in Enmund. Earl Enmund drove the getaway car during a robbery at a farmhouse. He was not present at the farmhouse where the murder occurred. The record also failed to disclose that he intended to kill or attempted to kill. Enmund, 458 U.S. at 788-89, 102 S.Ct. at 3372, 73 L.Ed.2d at 1145-46. At the least, Hall was present when Hurst was murdered, and he aided in her abduction. Moreover, Hall's gun was used to murder Hurst. This evidence supports a finding that Hall either took life, attempted to take life, intended to take life, or intended to utilize lethal force.[6]
 
 
 19
 Therefore, after "examining the individual culpability of the defendant, as did the Supreme Court in Enmund, we conclude that the punishment was not disproportionate in relation to Hall's participation in the crime." Ross v. Hopper, 716 F.2d 1528, 1533 (11th Cir.1983). See also Henry v. Wainwright, 721 F.2d 990, 995 (11th Cir.1983).
 
 
 20
 Moreover, the trial court adequately instructed the jury that it had to find that Hall personally had the intent to kill. The court instructed as follows: "A premeditated design to kill is the fully formed conscious purpose to take human life, formed upon reflection and present in the mind at the time of the killing." At another place during the instructions, the court stated: "It will be sufficient proof of such premeditated design if the circumstances attending the homicide and the conduct of the accused convince you beyond a reasonable doubt of the existence of such premeditated design at the time of the homicide." (Emphasis added.)
 
 
 21
 Hall, however, contends that the Fifth Circuit decision in Clark v. Louisiana State Penitentiary, 694 F.2d 75 (5th Cir.), rehr'g denied, 697 F.2d 699 (5th Cir.1983), is dispositive of this issue. We disagree. In Clark, Clark and another robbed a restaurant and, during the course of the robbery, murdered the assistant manager. The jury convicted Clark of first degree murder, and the court sentenced him to death. The Fifth Circuit reversed his conviction and sentence.
 
 
 22
 The Fifth Circuit looked to the overall jury charge and found that the jury was told "that they could find evidence of [Clark's intent to kill] in acts of butchery--by Glover--if the two of them had combined to commit the crime of armed robbery." Id. at 77. The jury was not compelled to determine whether Clark had the specific intent to kill as required by the Louisiana statute. The jury instruction created a presumption that Glover's acts were intended by Clark. The Fifth Circuit, therefore, held that the jury instructions "relieved the prosecution of its burden in violation of Mullaney v. Wilbur, 421 U.S. 684 [95 S.Ct. 1881, 44 L.Ed.2d 508] (1975), and cast the burden of disproving that intent upon Clark, in violation of Sandstrom v. Montana, 442 U.S. 510 [99 S.Ct. 2450, 61 L.Ed.2d 39] (1979)." Clark, 694 F.2d at 77.
 
 
 23
 This case differs from Clark. Clark was charged with first degree murder, and the jury was instructed to find the defendants guilty of any crime, including murder, committed in furtherance of the robbery, the underlying crime. It was unnecessary for the jury to find Clark had the intent to kill to convict him of murder in the first degree. Intent was presumed. No underlying crime existed in this case by which the jury could have presumed Hall intended to kill. The jury was not instructed to find Hall guilty of first degree murder if it found the murder was committed in furtherance of another crime. The burden of proving intent to kill remained with the prosecution. Therefore, the problem present in Clark does not exist in this case.
 
 
 24
 (4) Prosecutorial Remarks During the Guilt and Sentencing Phases of the Trial
 
 A. Remarks During the Guilt Phase
 
 25
 Hall alleges that certain remarks by the prosecutor during the guilt phase of his trial denied him due process of law and deprived him of a reliable determination of guilt in a capital trial as required by the sixth, eighth, and fourteenth amendments to the federal constitution. The state argues the prosecutorial remarks were proper and did not violate Hall's constitutional rights.
 
 
 26
 During his closing argument, the prosecutor referred to Hall by stating: "[T]he evidence shows us that this defendant sitting right over there, and he's asleep ...." Hall urges us to reverse his conviction because this statement was an improper comment on his failure to testify. We disagree.
 
 
 27
 A prosecutor may not comment on a defendant's failure to testify, and it is reversible error to do so. Griffin v. California, 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965); United States v. Brown, 546 F.2d 166, 173-74 (5th Cir.1977).
 
 
 28
 The standard for determining if there has been an impermissible comment on a defendant's right to remain silent at the time of his arrest or his right not to testify at trial is whether the statement was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.
 
 
 29
 United States v. Vera, 701 F.2d 1349, 1362 (11th Cir.1983); United States v. Dearden, 546 F.2d 622, 625 (5th Cir.), cert. denied, 434 U.S. 902, 98 S.Ct. 295, 54 L.Ed.2d 188 (1977). In applying this test, the court must "look to the context in which the statement was made in order to determine the manifest intention which prompted it and its natural and necessary impact upon the jury." Samuels v. United States, 398 F.2d 964, 967 (5th Cir.1968), cert. denied, 393 U.S. 1021, 89 S.Ct. 630, 21 L.Ed.2d 566 (1969).
 
 
 30
 The prosecutor's comment on Hall's sleeping during the trial was not a comment on Hall's failure to testify. It was not intended to be nor was it of such a character that a jury would naturally and necessarily take it to be. Vera, 701 F.2d at 1362; Dearden, 546 F.2d at 625. The comment simply related to Hall's demeanor during the trial. Hall also contends that the prosecutor improperly commented on his failure to testify on three other occasions.[7] These statements do not comment on Hall's failure to testify. The prosecutor merely explains to the jury that Hall has confessed to all of the facts of the crime except the killing of Hurst. The jury would not take these remarks as calling attention to the failure of Hall to testify. The prosecutor, therefore, has not violated the holding in Griffin v. California.[8]
 
 
 31
 Hall also contends that another prosecutorial remark during the guilt phase was improper and prejudicial. During his closing argument, the prosecutor stated:
 
 
 32
 I don't know; there she is, we can't bring her back, you know; I don't know much worse that you could have. I really don't know ... now this is a tragic case. We have a deceased woman; she can't testify. I don't know how quick death comes to people; I know some die hard, some die easy. It comes to all of us sooner or later.
 
 
 33
 The state argues that this remark was not prejudicial.
 
 
 34
 In reviewing a claim of prosecutorial misconduct in a habeas corpus case, we must determine "whether the prosecutor's actions [were] of such a nature as to render the trial fundamentally unfair." Donnelly v. DeChristoforo, 416 U.S. 637, 642-45, 94 S.Ct. 1868, 1871-72, 40 L.Ed.2d 431 (1974); Brooks v. Francis, 716 F.2d 780, 787 (11th Cir.1983); Hance v. Zant, 696 F.2d 940, 950-51 (11th Cir.), cert. denied, --- U.S. ----, 103 S.Ct. 3544, 77 L.Ed.2d 1393 (1983). We consider the totality of the circumstances in making this determination. Brooks, 716 F.2d at 787; Hance, 696 F.2d at 950. Applying these standards, the prosecutor's comment during the guilt phase did not reach a level which made the trial fundamentally unfair. Brooks, 716 F.2d at 788. The prosecutor was simply stating a fact; Karol Lea Hurst was dead and she could not testify. These comments are barely questionable; certainly, they are not of constitutional magnitude. Hance, 696 F.2d at 950; Houston v. Estelle, 569 F.2d 372, 377-78, n. 8 (5th Cir.1978).[9]
 
 B. Remark During the Penalty Phase
 
 35
 Hall also challenges a remark made by the prosecutor during the closing argument at the penalty phase of the trial. The prosecutor stated: "Ladies and gentlemen of the jury, with all due sincerity, I don't see any mitigation in this particular case." The sentencing phase of a capital murder trial in Florida presents a different situation than the guilt phase. In Florida, the jury has the choice of recommending a life sentence or the death penalty after finding the defendant guilty. Fla.Stat. Sec. 921.141(2) (West Supp.1983). While the jury's recommendation of life or death is only advisory, it is of critical importance that a prosecutor not play on the passions of a jury with a person's life at stake. Brooks, 716 F.2d at 788; Hance, 696 F.2d at 951. While the prosecutor's comment expressing his personal opinion to the jury is questionable, it is not unconstitutional. Hance, 696 F.2d at 951. The remark did not incite the passions and fears of the jury. Brooks, 716 F.2d at 788.
 
 
 36
 (5) Whether the Conviction for Killing the Policeman was Improperly Utilized to Show the Aggravating Circumstance of Prior Criminal History
 
 
 37
 Hall claims that because the Supreme Court of Florida reduced his sentence for murdering the police officer from first to second degree murder, the conviction should not have been used to show the aggravating circumstance of prior criminal history. Hall v. State, 403 So.2d 1319 (Fla.1981). Hall contends that this error deprived him of his rights under the eighth amendment to a fair and reliable determination of his penalty. The state contends the utilization of the police officer's murder was proper to support an aggravating circumstance of prior criminal history.[10]
 
 
 38
 Hall's claim lacks merit. Under Florida law, an aggravating circumstance exists when a defendant has been "previously convicted of another capital felony or of a felony involving the use or threat of violence to the person." Fla.Stat.Ann. Sec. 921.141(5)(b) (West Supp.1983). A second degree murder conviction satisfies this standard. Therefore, the police officer's murder was properly utilized to find the aggravating circumstance of prior criminal history. Furthermore, Hall's 1968 conviction for assault with intent to commit rape was before the trial court and was sufficient to support the existence of this aggravating circumstance.
 
 
 39
 (6) The Trial Court's Failure to Weigh Mitigating Factors
 
 
 40
 Hall asserts that the trial court failed to consider relevant mitigating circumstances, thereby rendering his death sentence arbitrary and capricious in violation of the eighth and fourteenth amendments.[11] Hall contends that his testimony during the sentencing phase of the trial was sufficient to prove the mitigating circumstances of diminished capacity to appreciate the criminality of his conduct and under influence of extreme emotional disturbance.[12] Fla.Stat.Ann. Sec. 921.141(6)(b), (f) (West Supp.1983). We disagree.
 
 
 41
 The evidence presented by Hall was insufficient to compel the trial court to find the existence of a mitigating circumstance. While the sentencer must consider all evidence presented in mitigation, he also determines the weight to be given to evidence of relevant mitigating circumstances. Eddings v. Oklahoma, 455 U.S. 104, 114-15, 102 S.Ct. 869, 876-77, 71 L.Ed.2d 1 (1982). In the present case, we cannot conclude that the sentencer erred in holding that Hall's proffered evidence was insufficient to establish these mitigating circumstances.
 
 
 42
 (7) Hall's Absence From Various Stages of His Trial.
 
 
 43
 Hall urges that his due process rights and his right to confrontation were violated by his absence during (1) the general qualification of jurors; (2) a discussion on various legal motions; (3) his counsel's stipulation to the excusal of an alternate juror; (4) the marking for identification of an exhibit; (5) the release of the remaining alternate jurors at the end of the guilt phase; (6) the trial court's discussion with the jury concerning their request for certain items of evidence during deliberation; and (7) the trial judge's dismissal of the jury. The state contends that Hall was present at all critical stages of the trial, and therefore, his absence did not violate any of his rights. Agreeing with the state, the district court held that Hall was not absent from any critical stages of the trial, and that Hall had waived his right to be present at the various stages of his trial.
 
 
 44
 "[A]n accused has [the] right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819, n. 15, 95 S.Ct. 2525, 2533, n. 15, 45 L.Ed.2d 562 (1975); Snyder v. Massachusetts, 291 U.S. 97, 105-08, 54 S.Ct. 330, 332-33, 78 L.Ed. 674 (1934); United States v. Stratton, 649 F.2d 1066, 1080 (5th Cir.1981). In this case, the district court determined that Hall's absence from the various stages of the trial did not violate his due process rights.
 
 
 45
 We are concerned about two matters: (1) the circumstances surrounding Hall's absence during the trial court's discussion with the jury concerning items of evidence during the jury's deliberations, and (2) the effect of our recent holding that a defendant may not waive his presence in a capital case announced in Proffitt v. Wainwright, 685 F.2d 1227, 1256-58 (11th Cir.1982), modified on reh'g, 706 F.2d 311 (11th Cir.1983), cert. denied --- U.S. ----, 104 S.Ct. 508, 509, 78 L.Ed.2d 697, 698.[13] Precedent in this circuit suggests that Hall's absence during discussions with the jury may constitute error. United States v. Benavides, 549 F.2d 392 (5th Cir.1977). We read Proffitt to hold that a defendant may not waive his presence at any critical stage of his trial.
 
 
 46
 This record requires further development for a determination of (1) why Hall was absent during communications with the jury, (2) what was communicated to the jury, and why, (3) whether Hall knowingly and willingly waived his right to be present, (4) was Hall removed from the courtroom because of misconduct, (5) what "security" reason caused Hall to be absent from the trial at one point, and (6) whether Hall's absence was at a non-critical stage of the trial and, therefore, harmless. The only thing in the record to show anything regarding Hall's absence is his lawyer's statement (also made in Hall's absence) that, "I think the record ought to reflect that I personally talked to my client before we picked the twelve trial jurors and asked if he had any problem with it. He made the statement whatever I want to do is fine, that I was to run the show."
 
 
 47
 (8) The Federal District Court's Denial of a Hearing on Hall's Ineffective Assistance of Counsel Claims
 
 
 48
 The federal district court decided Hall's ineffective assistance of counsel claims without holding an evidentiary hearing. Hall v. Wainwright, 565 F.Supp. 1222, 1240-42 (M.D.Fla.1983). It adopted the state court's ruling after holding that Hall had deliberately bypassed his opportunity for an evidentiary hearing on his ineffective assistance of counsel claim in state court. Id. at 1241. The district court based its decision of deliberate bypass on one sentence Hall's counsel uttered in the rule 3.850 hearing.[14] This sentence was sufficient evidence for the district court to conclude that Hall had deliberately bypassed his opportunity to produce evidence in the rule 3.850 hearing.
 
 
 49
 While Hall's counsel did state that he did not want to put on evidence as a matter of tactics, there are other statements in the record which show that Hall's counsel's decision not to put on evidence was not a tactical decision, but a decision compelled by the exigencies of the circumstances.
 
 
 50
 On September 20, 1982, the trial court ordered the public defender to confer with Freddie Lee Hall and advise him of his rights under Florida Rule of Criminal Procedure 3.850. The trial court also ordered the public defender to file all motions under rule 3.850 by September 27. The court extended this deadline to 9 a.m., September 28. Hall was scheduled to be electrocuted on October 6, 1982. Consequently, the public defender had seven days to confer with his client, advise him of his rights, prepare pleadings, prepare a strategy for the hearing, interview witnesses, and obtain information for the hearing.[15] Throughout the state habeas corpus hearing, Hall's attorney argued that he was unprepared to proffer any evidence because of the stringent time limitations.
 
 
 51
 During the rule 3.850 hearing, Hall's counsel had incorporated a motion for continuance into his motion to vacate and set aside the sentence. During the argument concerning the motion for continuance, Hall's attorney stated, "[t]his is not a ploy to postpone ultimate judgment on Mr. Hall." During the rule 3.850 motion hearing, Hall's attorney stated that "[he] was not prepared at this time to call witnesses. I'm not adequately prepared to examine or cross-examine any witnesses with regard to the allegations in the motion." Hall's attorney also stated, "We are not prepared to conduct an evidentiary hearing." Concerning Hall's attorney's decision not to put Hall's trial attorneys on the stand, Hall's attorney stated:
 
 
 52
 With regard to Mr. Brown's assertion that what we are seeking is the truth here, we certainly concur in that, Your Honor. The point is Mr. Brown is too good of a trial counsel--and I've seen and witnessed and been against him in too many cases--to know that Mr. Brown would suggest to the Court, in a situation this serious, I put a witness on the stand, not having been able to fully explore how he's going to answer my questions and start asking open-ended questions. He doesn't do that at trial. I don't do that at trial, and I don't intend to do it here.
 
 
 53
 These statements support Hall's contention that his lawyers were not prepared to conduct a rule 3.850 motion, and therefore, produced no evidence at the hearing.[16]
 
 
 54
 Unless it is clearly shown on the record that a deliberate bypass has occurred, a federal court must hold an evidentiary hearing to discern whether a deliberate bypass has occurred. Thomas v. Zant, 697 F.2d 977, 988-89 (11th Cir.1983); Buckelew v. United States, 575 F.2d 515, 519 (5th Cir.1978); Coco v. United States, 569 F.2d 367, 370-71 (5th Cir.1978). The district court ruled that Hall deliberately bypassed his right to vindicate himself in state court. The district court relied on one statement, but other statements to the contrary in the record indicate Hall did not bypass. Since the record does not clearly show a deliberate bypass, the district court must hold an evidentiary hearing on whether Hall deliberately bypassed his state remedies. Thomas, 697 F.2d at 988-89.
 
 
 55
 (9) The Barring of Various Claims from a Ruling on Their Merits by the District Court
 
 
 56
 The district court determined that certain claims raised in Hall's habeas corpus petition were barred from its consideration. It held that Hall had failed to exhaust his state court remedies as to these claims, and therefore, was precluded from raising them in federal court. Hall v. Wainwright, 565 F.Supp. 1222, 1226-35 (M.D.Fla.1983). Hall contends he is not precluded from raising these claims for three reasons: (a) Florida does not enforce its procedural default rules in capital cases; (b) the state courts ruled on the merits of the claims; and (c) "cause" and "prejudice" exist to excuse his default.
 
 
 57
 (a) Florida Does Not Enforce Its Procedural Default Rules in Capital Cases
 
 
 58
 Hall argues that the Supreme Court of Florida does not enforce its procedural default rules in capital cases. This claim is without merit. The Supreme Court of Florida enforces its procedural default rules in capital cases. See Meeks v. State, 382 So.2d 673 (Fla.1980), aff'd, 418 So.2d 987 (Fla.1982), cert. denied, --- U.S. ----, 103 S.Ct. 799, 74 L.Ed.2d 1002 (1983); Adams v. State, 380 So.2d 423 (Fla.1980). See also, Ford v. Strickland, 696 F.2d 804, 816 (11th Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983).
 
 
 59
 (b) The State Courts' Ruling on the Merits
 
 
 60
 Hall claims the Supreme Court of Florida ruled on the merits of certain claims, and, therefore, the state waived its procedural default rule. We disagree.
 
 
 61
 Hall points to a comment made by the Supreme Court of Florida to support his contention: "Hall presented the trial court with numerous other points regarding his sentencing. As did the trial court, we find no merit to them." Hall v. State, 420 So.2d 872, 874 (Fla.1982). Earlier in the opinion, however, the court had stated: "[t]he majority of issues raised in the motion to vacate were raised on appeal. Most of the remaining issues could have been raised there. They are, therefore, not matters which will support a collateral attack." Id. at 873.
 
 
 62
 To discern whether procedural default has occurred where the state courts have discussed the merits of a constitutional challenge after ruling that no procedural default has occurred, this court must determine the basis of the state court decision. Ratcliff v. Estelle, 597 F.2d 474, 477 (5th Cir.), cert. denied, 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979). The Supreme Court of Florida based its decision on the procedural default rule. Its discussion of the merits was an effort to dispose of the claims in the event its procedural ruling was in error. Ratcliff, 597 F.2d at 478. Moreover, "a court will not reach a constitutional question if it can base its decision on nonconstitutional grounds." Ratcliff, 597 F.2d at 478. See Rescue Army v. Municipal Court, 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947). A state court is entitled to express its views on federal constitutional issues without waiving its procedural default rules. See United States Ex rel. Caruso v. Zelinsky, 689 F.2d 435, 439-41 (3rd Cir.1982). Since the Supreme Court of Florida based its holding on a valid procedural rule, the district court was correct in not considering the claims barred for that reason. Ratcliff, 597 F.2d at 477.
 
 
 63
 (c) "Cause" and "Prejudice"
 
 
 64
 Since the state court refused to hear the constitutional claims because of its valid procedural rules, Hall must show "cause for" and "prejudice from" his failure to timely raise the claims. Engel v. Isaac, 456 U.S. 107, 110-11, 102 S.Ct. 1558, 1562-63, 71 L.Ed.2d 783 (1982); Wainwright v. Sykes, 433 U.S. 72, 90-92, 97 S.Ct. 2497, 2508-09, 53 L.Ed.2d 594 (1977); Sullivan v. Wainwright, 695 F.2d 1306, 1310 (11th Cir.1983). Hall contends that cause exists for his failure to timely raise these claims because his counsel was ineffective.
 
 
 65
 Because it held that Hall had deliberately bypassed state opportunities to present the claim, the district court never ruled on the merits of Hall's ineffective assistance of counsel allegations. Therefore, we cannot determine whether Hall has established "cause" because of his counsel's ineffectiveness until the district court holds a hearing on the deliberate bypass issue. If the district court concludes that Hall did not deliberately bypass his state remedies, it must hold a hearing on the ineffective assistance of counsel claim; and if the district court finds that Hall's counsel was ineffective, Hall is entitled to a new trial. The establishment of "cause" and "prejudice" becomes irrelevant. If the district court determines that Hall's attorney was effective, Hall has failed to establish "cause." If the district court holds that a deliberate bypass has occurred, Hall will never be able to show "cause" because his ineffective assistance of counsel claim will be barred from our review. Resolving this issue, therefore, depends on the district court's ruling on whether a deliberate bypass has occurred.
 
 
 66
 At the hearing on the deliberate bypass issue, the parties should be allowed to show the circumstances which lead to Hall's absence during communications with the jury. The district court judge may designate the procedure to be used by the parties to make these circumstances known.
 
 Conclusion
 
 67
 Having determined that Hall is entitled to a hearing on his absence from the courtroom issue and an evidentiary hearing on whether he deliberately bypassed, we affirm in part, reverse in part, and remand for proceedings consistent with this opinion.
 
 
 68
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED
 
 APPENDIX
 
 69
 During the 3.850 motion hearing, Hall's attorney stated, in part:
 
 
 70
 With the Court's indulgence, I would like to read into the record, since our appointment the work schedule which Mr. Johnson and I together have engaged in solely related to this matter. The time records herein are the times that we were both working together. In other words, I have not added the times together, these would be double if you were counting man power.
 
 
 71
 Tuesday, September 21, 1982, 10:30 A.M. to 6:00 P.M., we went to Florida State Prison in Starke, conferred with the defendant and began our draft on the initial motions. Wednesday, September 22, 7:30 in the morning through 6:30 in the afternoon, except for about an hour and a half, we had to attend other business, reviewed the trial transcript. Thursday, September 23, 8:00 in the morning until 10:30 in the evening, less one hour when we were required to be in Court in Tavares, reviewed the trial transcript. Friday, 8:00 in the morning through 12 midnight, we reviewed the trial transcript and depositions taken by counsel. Saturday, September 25, 9:30 in the morning until 10:00 in the evening, we completed review of the trial transcript. Sunday, September 26, 10:00 A.M. through 8:30 P.M. we prepared draft motions and draft of rule 3.850 motion, Application for Stay of Execution, and Memorandum in Support Thereof, and other documents. Monday, September 27, from 9:00 A.M. on that day through 3:00 A.M. the next day, prepared pleadings, etc.
 
 
 72
 and attended a hearing before you with regard to certain outstanding motions.
 
 
 73
 ....
 
 
 74
 I would state for the record neither I nor Mr. Johnson have reviewed Mr. Aulls and Robuck's files. In fact, both of them refused to give us their files until we gave them a letter from Mr. Hall suggesting his permission, which I also suggest was exactly what they should have done as counsel. It was only two days ago we were able to obtain that written release from the Defendant, not because of any delay on his part or ours, but we just didn't understand that it would be their position although we should have anticipated that.
 
 
 75
 We have been through their files to some extent. Mr. Johnson has looked at Mr. Robuck's file with particular regard to how much time was spent on the case. We'd like to state clearly and unequivocally in the record we are not suggesting that Mr. Aulls and Mr. Robuck are incompetent lawyers. They are, rather, respected members of the Lake County Bar. Our suggestion in the brief is that they may not have provided effective assistance of counsel in this particular case due to a myriad of factors which we're not prepared to discuss or examine them on.
 
 
 76
 We also suggest we didn't know what issues to even begin to investigate until we read the eleven-hundred-page transcript and examined the documents.
 
 
 77
 I have nothing to offer at an evidentiary hearing at this time, Your Honor, except for one matter.
 
 
 78
 ....
 
 
 79
 I do realize the trial strategy defense is there and that to the extent someone can allege somewhere it was a matter of strategy and tactics rather than ineffective assistance and perhaps the same wouldn't be claimed. As I said before, some of these claims may stand, some may not. I am not prepared to proceed at this time, Your Honor, realizing full well, having followed Mr. Ruffin's case very carefully, precisely the wrath which I will incur when I come before the Florida Supreme Court not having put on testimony. I choose to do that as a matter of tactics at this time.
 
 
 80
 JAMES C. HILL, Circuit Judge, specially concurring:
 
 
 81
 I write separately because, although I agree with much of the majority opinion, I disagree with the resolution of two issues: the constitutionality of the prosecutor's closing argument at Hall's trial (part 4 B); and Hall's right to presence at his trial (part 7).
 
 
 82
 * The majority concludes that the prosecutor's closing argument, in which he expressed his personal opinion that there existed "no mitigation in this particular case," did not deny Hall a fundamentally fair trial. See Donnelly v. DeChristoforo, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). I agree completely with this conclusion. I have some doubt, however, as to the majority's statement that "it is of critical importance that a prosecutor not play on the passions of the jury with a person's life at stake." In many cases in which the prosecutor seeks the death penalty, simply reciting the facts of the crime is enough to incite the "passions" of the jury. I therefore seriously doubt that this analysis, although supported by Hance v. Zant, 696 F.2d 940 (11th Cir.1983), is the proper method to resolve these types of cases. Of course, the opinion in Hance is binding on this panel, and I do not fault the majority's reliance on Hance. I write separately on this issue because it will soon be before the court en banc, at which time we will address this issue anew. (The "closing argument" issue is presented in several of the cases slated for en banc consideration in June.)
 
 II
 
 83
 I also disagree in part with the majority's resolution of Hall's contention that he was not present at all stages of his trial. First, I believe this claim may be barred, at least in part, by a procedural default. See Wainwright v. Sykes, 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977); Ford v. Strickland, 696 F.2d 804, 816 (11th Cir.1983) (en banc), cert. denied, --- U.S. ----, 104 S.Ct. 201, 78 L.Ed.2d 176 (1983). Hall did not raise this claim on his direct appeal, and the Florida court stated, in resolving Hall's appeal from his Rule 3.850 proceeding:
 
 
 84
 The majority of issues raised in the motion to vacate were raised on appeal. Most of the remaining issues could have been raised there. They are, therefore, not matters which will support a collateral attack. Adams v. State, 380 So.2d 423 (Fla.1980); Sullivan v. State, 372 So.2d 938 (Fla.1979). Several of the points raised, however, merit discussion.
 
 
 85
 Hall claims that he was not present during some of the jury selection and that his absence abrogated his fundamental constitutional rights. Francis v. State, 413 So.2d 1175 (Fla.1982). The trial court found Francis distinguishable from the instant case. We agree. Hall was not present at the roll call of prospective jurors or at the general qualification of prospective jurors. He was, however, present at all critical stages of the proceedings and available to consult with his counsel.
 
 
 86
 Hall v. State, 420 So.2d 872, 873 (Fla.1982). The Florida court did not address any of the other six absences cited by Hall. Although this court will address issues passed on by a state court despite a procedural default, see Grizzell v. Wainwright, 692 F.2d 722, 725 (11th Cir.1982), cert. denied, --- U.S. ----, 103 S.Ct. 2129, 77 L.Ed.2d 1307 (1983), I somewhat doubt that the Florida court may fairly be said to have passed on any of the seven absences raised except the absence at the jury selection/introductory remarks. In addition, the meaning of the statement that some issues "merit discussion," 420 So.2d at 873, is unclear. As we have stated, "[w]here the state court decision relies on both a procedural default and a lack of merit, the situation is unclear." Dobbert v. Strickland, 718 F.2d 1518, 1524 (11th Cir.1983). I will nevertheless address the merits because the majority has done so.
 
 
 87
 In discussing Hall's right to be present at his trial, the majority reads Proffitt v. Wainwright, 685 F.2d 1227 (11th Cir.1982), modified, 706 F.2d 311 (1983), to "hold that a defendant may not waive his presence at any critical stages of his trial"; however, they also indicate that the record requires further development to determine "whether Hall knowingly and willingly waived his right to be present."[1] I agree that the relevant initial inquiry is whether Hall was absent during stages of his trial that constituted "critical stages," in the sense that critical stages are "all stages of trial when his absence might frustrate the fairness of the proceedings." United States v. Stratton, 649 F.2d 1066, 1080 (5th Cir.1981) (footnote omitted); see also Proffitt, 685 F.2d at 1256 (using similar language). I do not, however, read Proffitt to hold that the defendant cannot waive his presence at a critical stage (if that is the intended meaning of the majority's opinion). Although the panel in Proffitt initially reached that conclusion, see 685 F.2d at 1257-58, on rehearing the panel stated that "[w]e need not decide the issue of whether presence at a capital trial ever is waivable, however, for here, even if we assume that the right to presence in a capital case may be waived, no knowing and voluntary and, therefore, no effective waiver was made." 706 F.2d at 312 (footnote omitted) (emphasis added). Of course, we must consider whether the panel's original conclusion that the defendant cannot waive his presence was correct; but I believe, upon examining the governing case law, that the panel probably reached the wrong result in their initial opinion.
 
 
 88
 The argument that a defendant cannot waive his right to be present at a capital trial draws its primary authority from three Supreme Court cases decided around the turn of the century. See Diaz v. United States, 223 U.S. 442, 32 S.Ct. 250, 56 L.Ed. 500 (1912); Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892); Hopt v. Utah, 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884). In Proffitt, the panel originally concluded that "the only precedents directly ruling on the issue [hold] that the right to presence in capital cases is so fundamental that the defendant cannot waive it." After reviewing the three cases, however, I have come to the conclusion that they do not hold that presence at a capital trial is not waivable as a matter of constitutional law, but that any such indication is merely dicta. Furthermore, subsequent Supreme Court cases--both by holding and by dicta--seem to me to discredit the earlier statements. Having boldly stated this proposition, I believe a review of the cases is in order.
 
 
 89
 In Hopt, the defendant was found guilty of first degree murder and sentenced to death. At trial, the defendant challenged six jurors on the basis of bias. Under the then-current Utah procedure, other jurors were appointed "to try the challenge," (to determine whether the six were biased) and proceeded to do so out of the presence of the defendant. 4 S.Ct. at 203. Although defendant Hopt failed to enter an objection at trial, he contended, both in an intermediate appeal and before the Supreme Court, that his conviction was invalid because the hearing on the issue of bias was not held in his presence. Faced with the argument that Hopt had waived his right to be present, the Court held that "it was not within the power of the accused or his counsel to dispense with the statutory requirement [under the Utah criminal code] as to his personal presence at the trial." Id. at 204. Although the Court also cited the due process clause, a close reading of the decision demonstrates that the due process analysis was not the basis of the Court's decision on waiver; thus, the opinion does not support the proposition that the defendant, as a matter of constitutional law, may not waive his presence at trial. The Court stated:
 
 
 90
 The argument [in support of waiver] necessarily proceeds upon the ground that he alone is concerned as to the mode by which he may be deprived of his life or liberty, and that the chief object of the prosecution is to punish him for the crime charged. But this is a mistaken view as well of the relations which the accused holds to the public as of the end of human punishment. The natural life, says Blackstone, "cannot legally be disposed of or destroyed by any individual, neither by the person himself, nor by any other of his fellow creatures merely upon their own authority." 1 Bl.Comm. 133. The public has an interest in his life and liberty. Neither can lawfully be taken except in the mode prescribed by law. That which the law makes essential in proceedings involving the deprivation of life and liberty cannot be dispensed with, or affected by the consent of the accused, much less by his mere failure, when on trial and in custody, to object to unauthorized methods. The great end of punishment is not the expiration or atonement of the offense committed, but the prevention of future offenses of the same kind. 4 Bl.Comm. 11. Such being the relation which the citizen holds to the public, and the object of punishment for public wrongs, the legislature had deemed it essential to the protection of one whose life or liberty is involved in a prosecution for felony that he shall be personally present at the trial; that is, at every stage of the trial when his substantial rights may be affected by the proceedings against him. If he be deprived of his life or liberty without so present [sic], such deprivation would be without that due process of law required by the constitution.
 
 
 91
 Id. 4 S.Ct. at 204-05.
 
 
 92
 Thus, in Hopt, the Court held that the Utah statute, under the teachings of Blackstone, was not one for the protection of the accused but for the protection of the public. From this, the Court reasoned that it was not for the accused to waive the benefit of the statute, basing its holding as to waiver on late nineteenth century concepts of natural/common law (not on the due process clause). Having disposed of the waiver issue on those grounds, there was no need for the Court to address any constitutional limitations on waiver. I think that the fair reading of the opinion is that the Court did not do so, but, in any event, statements on that subject would have been dicta. The Court's constitutional holding was that the statute was of such importance that the failure to follow it would amount to a deprivation of due process. Significantly, the case does not rest on the Sixth Amendment right to confront witnesses, which was not then "applicable" to the states, see Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1067, 13 L.Ed.2d 923 (1965) (incorporating confrontation clause); and it seems to me that the claim that the state violated due process by failing to follow its own statutes or the common law is both not present in this case and discredited somewhat by later decisions. See discussion infra. To reiterate, I do not read Hopt as unequivocally stating that the defendant may never waive his presence at a capital trial: I read Hopt as stating that defendant could not waive his right under the Utah statute and that the failure of the state to follow that statute violated due process. Later decisions of the Court, see infra, support this interpretation.
 
 
 93
 In Lewis v. United States, 146 U.S. 370, 13 S.Ct. 136, 36 L.Ed. 1011 (1892), another death case, the Court again discussed the issue. In Lewis, the prosecutor and the defendant were required to make their preemptory challenges independently--in other words, without knowledge on the part of either as to what challenges had been made by the other. The defendant complained of the method and preserved the error. In reversing the defendant's conviction, the Court stated, in dicta:
 
 
 94
 A leading principle that pervades the entire law of criminal procedure is that, after indictment found, nothing shall be done in the absence of the prisoner. While this rule has at times, and in the cases of misdemeanors, been somewhat relaxed, yet in felonies it is not in the power of the prisoner, either by himself or by his counsel, to waive the right to be personally present during the trial.
 
 
 95
 13 S.Ct. at 137. In support of this statement, the Court cited common law cases and discussed Hopt. The Court went on to state, a few pages later in the opinion, that "all rules of practice must necessarily be adapted to secure the rights of the accused; that is, where there is no statute, the practice must not conflict with or abridge the right as it exists at common law." Id. at 139. Thus, a reading of Lewis yields, to me, two conclusions. First, the Court did not have before it in that case the issue of whether the defendant may waive his right to presence: Lewis had properly objected and had no intention of waiving his right. Second, the Court relied largely, if not exclusively, on common law principles in reversing Lewis' conviction. Indeed, in Lewis (a United States criminal conviction) the Court did not mention or cite any provision of the Constitution. Thus, in my view, Lewis does not support the proposition that presence at a capital trial is nonwaivable. (Indeed, the panel in Proffitt apparently did not rely on Lewis.)
 
 
 96
 Finally, in 1912, the Supreme Court decided the case of Diaz v. United States, 32 S.Ct. 250. Diaz, although it involved a homicide, was not a capital case. Id. at 251. Diaz objected that he was wrongly convicted because the trial proceeded in part in his absence. The Court noted that the record demonstrated that he was present during all of the trial except for two occasions. On these instances,
 
 
 97
 [i]n the latter part of the trial, he voluntarily absented himself, and sent to the court a message expressly consenting that the trial proceed in his absence, which was done. On these occasions two witnesses for the government were both examined and cross-examined. No complaint grounded upon his absence was made in the trial court or in the Supreme Court of the Philippines; and the objection now made is that he did not voluntarily waive his right to be present, if he could waive it, but that it could not be waived, and that the court was therefore without power to proceed in his absence.
 
 
 98
 Id. at 253. In resolving this claim, the Court first decided that, under Philippine law (the case was an appeal from the Philippines), the defendant could waive his right to be present. The Court then addressed the effect of section 5 of the Philippine Civil Government Act, which was substantially equivalent to the Sixth Amendment. In holding that the Civil Government Act did not bar waiver, the Court made the following statement:
 
 
 99
 And with like accord they have regarded an accused in custody and one who is charged with a capital offense as incapable of waiving the right; the one because his presence or absence is not within his own control; and the other because, in addition to being usually in custody, he is deemed to suffer the constraint naturally incident to an apprehension of the awful penalty that would follow conviction. But, where the offense is not capital and the accused is not in custody, the prevailing rule has been, that if, after the trial has begun in his presence, he voluntarily absenced himself, this does not nullify what has been done or prevent the completion of the trial, but, on the contrary, operates as a waiver ....
 
 
 100
 Id. at 254. In discussing Hopt and Lewis, the Court stated:
 
 
 101
 In each [case] the accused was in custody, charged with a capital offense, and was sentenced to death. In the first [Hopt ], a part of the trial was had in his absence notwithstanding the territorial statute [that] declared that he "must be personally present." He did not object at the time, and it subsequently was claimed that, by his silence, he had consented to what was done. But this court held otherwise [see quote above]. In the second case [Lewis ], "the prisoner was not brought face to face with the jury until after the challenges had been made and selected jurors were brought into the box to be sworn," and he excepted at the time to the mode in which the challenges were required to be made.
 
 
 102
 Id. at 255. A review of Diaz leads me to, primarily, one conclusion. Diaz was not a capital case, and, therefore, any indication by the Court in Diaz that the defendant cannot waive his presence in such a case is dicta (or perhaps in the nature of an exception to the holding). (I include here the long quotes from Diaz because, in Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), discussed infra, the Court implied that the Diaz principles of waiver apply in all cases, not only non-capital cases.)
 
 
 103
 As is apparent from the Court's opinion in Diaz, Lewis did not address the issue of waiver; and, as I have discussed above, I do not believe that Hopt stands for the proposition for which the court in Proffitt originally cited it. Thus, the three cases are of limited value on the troublesome issue. I believe that my reading of the three cases discussed above is supported by their interpretation in subsequent Supreme Court decisions. See Illinois v. Allen, 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970) (not a capital case); Snyder v. Massachusetts, 291 U.S. 97, 54 S.Ct. 330, 78 L.Ed. 674 (1934) (a capital case); Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915) (a capital case); Howard v. Kentucky, 200 U.S. 164, 26 S.Ct. 189, 50 L.Ed. 421 (1906).
 
 
 104
 In Frank, the Court was faced with the contention that Frank's absence from certain portions of his trial violated the due process clause under the rule stated in Hopt v. Utah. In discussing Hopt, the Court made the following statement:
 
 
 105
 the court [in Hopt ] had under review a conviction in a territorial court after a trial subject to local code of criminal procedure, which declared: "If the indictment is for a felony, the defendant must be personally present at the trial." The judgment was reversed because of the action of the trial court in permitting certain challenges to jurors, based upon the ground of bias, to be tried out of the presence of the court, the defendant, and his counsel. The ground of the decision of this court was the violation of the plain mandate of the local statute; and the power of the accused or his counsel to dispense with the requirement as to his personal presence was denied on the ground that his life could not be lawfully taken except in the mode prescribed by law. No other question was involved.
 
 
 106
 35 S.Ct. at 592 (some emphasis in original; some added). The Court went on to state that:
 
 
 107
 The distinction between what the common law requires with respect to trial by jury in criminal cases, and what the states may enact without contravening the "due process" clause of the Fourteenth Amendment, is very clearly evidenced by ... opinions written by Mr. Justice Schrass. In the Lewis case, which was a conviction of murder in a circuit court of the United States, the trial practice being regulated by the common law, it was held to be a leading principle, pervading the entire law of criminal procedure, that after indictment nothing should be done in the absence of the prisoner; that the making of challenges is an essential part of the trial, and it was one of the substantial rights of the prisoner to be brought face to face with the jurors at the time the challenges were made; and that in the absence of the statute, this right as it existed at common law must not be abridged. But in the Hallinger [146 U.S. 314, 13 S.Ct. 105, 36 L.Ed. 986 (1892) ] case where a state by legislative enactment had permitted one charged with a capital offense to waive a trial by jury and elect to be tried by the court it was held that this method of procedure did not conflict with the Fourteenth Amendment. So in Howard v. Kentucky, 200 U.S. 164, 175, 50 L.Ed. 21, 426, 26 S.Ct.Rep. 189 [191 (1906) ]--a case closely in point upon the question now presented--this court finding, that by the law of the state an occasional absence of the accused from the trial, from which no injury resulted to his substantial rights, was not deemed material error, held that the application of this rule of law did not amount to a denial of due process within the meaning of the Fourteenth Amendment.
 
 
 108
 Id. 35 S.Ct. at 592-93.
 
 
 109
 I note that the Frank Court accurately repeated the holding in Howard v. Kentucky, and that in Howard the Court specifically held that the defendant's presence at a voir dire on the issue of prejudice--the situation in Hopt --was not constitutionally mandated. Furthermore, the Court held that a possible misapplication of a state statute did not violate the due process clause, placing Hopt 's validity in question on that point, also.
 
 
 110
 In Snyder, the Court expressly noted that Hopt had been distinguished and limited by Frank. 291 U.S. at 106, 54 S.Ct. at 332. (The Court in Snyder held that the defendant need not be present during a jury view of the scene of the crime because that does not constitute a critical stage of the trial.) And, finally, in Illinois v. Allen, the Court stated:
 
 
 111
 The broad dicta in Hopt v. Utah, supra and Lewis v. United States, 146 U.S. 370 [13 S.Ct. 136, 36 L.Ed. 1011] (1892), that a trial can never continue in the defendant's absence, have been expressly rejected. Diaz v. United States, 223 U.S. 442 [32 S.Ct. 250, 56 L.Ed. 500] (1912). We accept instead the statement of Mr. Justice Cardozo who, speaking for the court in Snyder v. Massachusetts ... said: "no doubt the privilege [of personally confronting witnesses] may be lost by consent or at times even by misconduct."
 
 
 112
 397 U.S. at 342-43, 90 S.Ct. at 1060-61. The Court in Illinois v. Allen clearly read Diaz, even though it was not a capital case, as discrediting the broad dicta in the earlier two cases. In addition, the Court in Frank expressly discredited the dicta in those cases and read them as relying primarily on state statutes and the common law. Thus, it seems to me that reliance on Hopt (which seems to be the primary case put forth as support) to argue that the defendant may not waive his presence at a capital trial is unwarranted.
 
 
 113
 To avoid belaboring the issue any more than I already have, I would conclude that the defendant may waive his presence in a capital trial and that he may do so in any of a variety of ways. First, he may waive his right to presence by misconduct. See Illinois v. Allen. Second, he may waive his right to presence simply by failing to show up for the trial through no fault of the state. Diaz v. United States; see also United States v. Martinez, 604 F.2d 361 (5th Cir.1979), cert. denied, 444 U.S. 1034, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980). Finally, if the defendant is in custody, he may waive his presence under the knowing and voluntary standard enunciated in Proffitt, 706 F.2d at 312. (In Proffitt, the defendant, who was apparently in custody, did not even know of the hearing.) I realize that in the rehearing decision in Proffitt the court interpreted Diaz and Hopt differently than I have in this opinion; however, given the court's express disclaimer of ruling on whether presence could be waived, I do not believe that that interpretation is binding on this panel.
 
 
 114
 Abandoning for the moment the rather complex constitutional issues presented by this case, I feel that it is possible to resolve some of the subissues presented by Hall on appeal without a remand to the district judge. First, Hall urges that he was absent during the voir dire and selection of the jury; however, the district court noted that the state court found that he was, in fact, present for most of the proceedings. See Hall v. Wainwright, 565 F.Supp. 1222, 1239 (M.D.Fla.1983). This historical fact is supported by the record, and the district court's resolution of the issue by relying on the state finding seems to be proper. See Sumner v. Mata, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The Florida Supreme Court noted, however, that Hall was not present during the "roll call of prospective jurors or at the general qualification of prospective jurors." Hall v. State, 420 So.2d 872, 873 (Fla.1982). A review of the record indicates that the trial judge made opening remarks to the venire, introduced court personnel, instructed the venire concerning sequestration, and read the indictment. In addition, the judge excused several female veniremembers because they had children younger than age fifteen and excused numerous veniremembers on the basis of hardship or medical necessity. The trial judge also asked questions concerning exposure to pretrial publicity and excused several more jurors. At this point, the defendant entered the courtroom.
 
 
 115
 It is this absence during the voir dire proceedings on pretrial publicity that, in my opinion, necessitates a remand to the district court for a finding whether Hall knowingly and voluntarily waived his right to presence. (The absences during other portions of the voir dire do not appear to be critical.) The parties cite only one case, Howard v. Kentucky, 200 U.S. 164, 26 S.Ct. 189, 50 L.Ed. 421 (1906), that addresses the constitutional right to presence at voir dire proceedings. In Howard, the Court held that the defendant's absence during a hearing conducted by the judge on the issue of bias does not violate the due process clause.[2] Id. at 192. The prosecutor had moved to strike the juror on the basis of an affidavit of another juror; the judge held the hearing to determine the veracity of the allegations contained in the affidavit. Arguably, the holding in Howard could be interpreted to govern in this case--presumably supporting a decision that the voir dire was not a critical stage. I think Howard and this case differ in important ways, however.
 
 
 116
 First, as is clear from the opinion, see supra note 2, the Court in Howard relied to a large degree on the defendant's acquiescence in the procedure followed. The Court decided Howard before the advent of the knowing and voluntary standard applicable to waiver in this case, see Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); and, in this case, an evidentiary hearing on waiver is necessary to determine whether any waiver was knowing and voluntary. Second, there is a greater possibility that Hall's absence, as compared to the defendant's absence in Howard, could have resulted in prejudice. Although the juror excused in Howard appeared to favor the defendant, the defendant presumably could have added little to the hearing on bias--from the case it seems that the defendant had no first hand knowledge of the issue. In this case, however, Hall might have known some of the jurors; perhaps he could have aided his attorney in formulating questions or pointing out possible problems.
 
 
 117
 Thus, given this record, I agree that a hearing would be helpful on this subissue. I would instruct the trial judge to inquire whether Hall properly waived his right to presence and to explore the possibility that the absence was harmless beyond a reasonable doubt. Although I would be willing to hold harmless some of Hall's absences without further hearings, see infra, I believe a hearing on harmlessness might be helpful here.
 
 
 118
 As to Hall's other claims, it seems to me that United States v. Provenzano, 620 F.2d 985 (3d Cir.1980), cert. denied, 449 U.S. 899, 101 S.Ct. 267, 66 L.Ed.2d 129 (1980), and United States v. Gradsky, 434 F.2d 880 (5th Cir.1970), cert. denied, 409 U.S. 894, 93 S.Ct. 203, 34 L.Ed.2d 151 (1972), resolve adversely to Hall his claim that he had the right to be present at the discussion of various legal motions; it also seems that United States v. Dominguez, 615 F.2d 1093, 1094-96 & n. 4 (5th Cir.1980), which held that excusal of a juror out of the defendant's presence under certain circumstances does not violate the defendant's Rule 43 (of the Federal Rules of Criminal Procedure) right to presence, resolves adversely to Hall his claims that he should have been present both when the jury was dismissed and when alternate jurors were excused. Under Dominguez, it is permissible for the judge to excuse an active member of the jury during trial. See id.[3] The defendant's right to presence guarantees that he will be available to assist in the conduct of his defense--it is not simply a guarantee that he can observe the proceedings. See Gradsky, 434 F.2d at 883. Thus, it seems to me that excusal of alternate jurors and excusal of the jury after trial were not critical stages at which Hall should have been present. In any event, I would hold harmless beyond a reasonable doubt his absence at these events of minor importance. See Dominguez, 615 F.2d at 1096 n. 4; Proffitt, 685 F.2d at 1260; Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). I am also prepared to hold that marking of an exhibit for identification was not a critical stage or, if it was, that Hall's absence was harmless beyond a reasonable doubt.
 
 
 119
 This partially resolves six of Hall's seven absences; only his claim that he should have been present during the trial judge's discussion of certain items of evidence with the jury during their deliberations remains. The transcript records the following exchange between the court and jury:
 
 
 120
 WHEREUPON, JURY RETURNED TO OPEN COURT AT 5:55 P.M., JUNE 22, 1978, AND THE FOLLOWING PROCEEDINGS WERE HAD:
 
 
 121
 THE COURT: Mrs. Wheeler, I believe you've been selected forewoman?
 
 
 122
 FOREWOMAN: Yes, sir.
 
 
 123
 THE COURT: I understand you and the rest of the jurors feel you would like to recess at this time and come back in the morning. All right, I think that is a wise decision. I want to again admonish you not to watch or read or listen to any news broadcasts of the trial or any newspaper articles concerning the trial.
 
 
 124
 All right, Mr. Johnson here will bring you back in the morning when you have finished your breakfast and you can begin your deliberations again at that time. Do any of you have any questions?
 
 
 125
 FOREWOMAN: We'd like to look at some of the evidence.
 
 
 126
 THE COURT: All right, do you have the items listed?
 
 
 127
 FOREWOMAN: I know some of them we wanted to look at, the orange grove, the park, the entrance to the scene of the crime.
 
 
 128
 THE COURT: Let me say this, you can think about that tonight and make a list of them and give it to Mr. Johnson, and we will make arrangements for you to come into the courtroom tomorrow and look at them.
 
 
 129
 All right, Court is in recess.
 
 
 130
 COURT RECESSED FOR THE DAY.
 
 
 131
 The record does not show whether Hall's attorney was present during this exchange.
 
 
 132
 In United States v. Benavides, the former Fifth Circuit held that Rule 43 "affords the defendant the right to be present at all stages of his trial, including presence during communication between court and deliberating jury." 549 F.2d 392, 393 (5th Cir.1977) (citing Rogers v. United States, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975)). It may be that the Constitution does not require presence in this situation although Rule 43 does, see supra note 3; however, communications between court and jury are an important stage of the trial, and I would hesitate to hold that stage to be not critical. I nevertheless disagree that this issue should be remanded to the district court. As the Benavides court noted, the "error can be harmless," 549 F.2d at 393; and, in this case, I think Hall's absence was harmless.
 
 
 133
 A comparison of this case with Benavides and Rogers illustrates my conclusion. In Benavides the court's communication instructed the jury, which could not reach a verdict, to "consider the offense further." Id. (emphasis added). This phrasing was obviously prejudicial. In Rogers, the court, without consulting the parties, informed the jury (in reply to their inquiry) that he would accept a verdict of guilty with a recommendation of mercy. 422 U.S. at 36-38, 95 S.Ct. at 2093-2094. This also was prejudicial: "[a]t the very least, the court should have reminded the jury that their recommendation would not be binding in any way." Id. at 40, 95 S.Ct. at 2095.
 
 
 134
 Neither of these situations nor a situation raising a similar possibility of abuse is present in this case. As the transcript indicates, the judge simply instructed the jury not to read or view anything concerning the trial. He then informed the jury that they could view any items of evidence the next morning; in doing so, he simply followed the applicable Florida law. Florida Rule of Criminal Procedure 3.400 provides:The court may permit the jury, retiring for deliberation, to take to the jury room:
 
 
 135
 * * *
 
 
 136
 * * *
 
 
 137
 (d) all things received in evidence other than depositions. If the thing received in evidence is a public record or a private document which, in the opinion of the court, ought not to be taken from the person having it in custody, a copy shall be taken or sent instead of the original.
 
 
 138
 Thus the jury clearly had the right to view the evidence requested. By delaying the request until the next morning, the judge ensured compliance with Florida Rule 3.410 (to the extent it may apply), which provides:
 
 
 139
 After the jurors have retired to consider their verdict, if they request additional instructions or to have any testimony read to them they shall be conducted into the courtroom by the officer who had them in charge and the court may give them such additional instructions or may order such testimony read to them. Such instructions shall be given and such testimony read only after notice to the prosecuting attorney and to counsel for the defendant.
 
 
 140
 Thus, it is clear that the judge strictly followed the applicable law and that Hall's absence in this instance was harmless beyond a reasonable doubt.
 
 
 
 *
 Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 Title 28 U.S.C.A. Sec. 2254(a) provides:
 The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.
 
 
 [2]
 Hall was convicted as a principal in the first degree under Fla.Stat.Ann. Sec. 777.011, which provides:
 Whoever commits any criminal offense against the state, whether felony or misdemeanor, or aids, abets, counsels, hires, or otherwise procures such offense to be committed, and such offense is committed or is attempted to be committed, is a principal in the first degree and may be charged, convicted, and punished as such, whether he is or is not actually or constructively present at the commission of such offense.
 
 
 [3]
 Hall v. State, 403 So.2d 1321 (Fla.1981)
 
 
 [4]
 Hall v. State, 420 So.2d 872 (Fla.1982)
 
 
 [5]
 Fla.Stat. Sec. 782.04(1)(a)(1), (2) and (3) defines murder as:
 (1)(a) The unlawful killing of a human being:
 
 
 [1]
 When perpetrated from a premeditated design to effect the death of the person killed or any human being; or
 
 
 [2]
 When committed by a person engaged in the perpetration of, or in the attempt to perpetrate, any:
 a. Trafficking offense prohibited by s. 893.135(1),
 b. Arson,
 c. Sexual battery,
 d. Robbery,
 e. Burglary,
 f. Kidnapping,
 g. Escape,
 h. Aircraft piracy, or
 i. Unlawful throwing, placing, or discharging of a destructive device or bomb; or
 
 
 [3]
 Which resulted from the unlawful distribution of opium or any synthetic or natural salt, compound, derivative, or preparation of opium by a person 18 years of age or older, when such drug is proven to be the proximate cause of the death of the user, is murder in the first degree and constitutes a capital felony, punishable as provided in s. 775.082
 Freddie Lee Hall was not tried on a felony murder theory. Therefore, only section 782.04(a)(1) is applicable.
 
 
 [6]
 Hall obtained the gun the morning of the murder. This fact supports a finding that Hall either killed, attempted to kill, intended to kill, or intended to use lethal force
 
 
 [7]
 The prosecutor stated: (1) "So what happens then? Here we come into something that's important. Who says that Ruffin killed her? I wasn't there. Karol Hurst is dead." (2) "This man admits all of it. The only thing he is not saying is, he is saying, 'I did everything, but I didn't kill her, I didn't have anything to do with that.' That's the big thing, that's the biggie, that's what he's saying." (3) "Now this is a tragic case. We have a deceased woman; she can't testify. I don't know how quick death comes to people; I know some die hard, some die easy. It comes to all of us sooner or later."
 
 
 [8]
 Our holding is supported by the curative instruction the trial court gave to the jury concerning Hall's failure to testify:
 In every criminal proceeding the defendant has the absolute right to remain silent. At no time is it the duty of a defendant to prove his innocence. From the exercise of the defendant's right to remain silent a jury is not permitted to draw any inference of guilt, and the defendant's failure to take the witness stand must not be considered in any manner an admission of guilt, nor should his failure to take the witness stand influence your verdict in any manner whatsoever.
 
 
 [9]
 Hall also contends that the prosecutor on various occasions remarked about items not received into evidence. This claim lacks merit because the alleged errors do not rise to the level of constitutional magnitude. Houston, 569 F.2d at 377-78, n. 8 (1978)
 
 
 [10]
 In Florida, a death sentence can be recommended by the jury and imposed by the trial court when aggravating circumstances exist which outweigh the mitigating circumstances. Fla.Stat.Ann. Sec. 921.141(2), (3) (Supp.1983)
 
 
 [11]
 Fla.Stat.Ann. Sec. 921.141(6) (West Supp.1983) provides seven mitigating circumstances for the jury to consider:
 (6) Mitigating circumstances.--Mitigating circumstances shall be the following:
 (a) The defendant has no significant history of prior criminal activity.
 (b) The capital felony was committed while the defendant was under the influence of extreme mental or emotional disturbance.
 (c) The victim was a participant in the defendant's conduct or consented to the act.
 (d) The defendant was an accomplice in the capital felony committed by another person and his participation was relatively minor.
 (e) The defendant acted under extreme duress or under the substantial domination of another person.
 (f) The capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired.
 (g) The age of the defendant at the time of the crime.
 The jury, however, is not limited to these enumerated factors, and may consider any evidence in mitigation it deems relevant. Lockett v. Ohio, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). See also Eddings v. Oklahoma, 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982).
 
 
 [12]
 During the sentencing hearing, Hall stated, "I was high when this taken place, I wasn't drunk, I was high, and I'm sorry to say I really don't want no one to get killed in this case, but it happened that way. I'm sorry it happened that way."
 
 
 [13]
 Hall contends that he may not waive his presence in a capital case, and therefore, his absence violated his due process rights
 
 
 [14]
 Hall's counsel stated, "I choose to [not put on any testimony] as a matter of tactics at this time."
 
 
 [15]
 The public defender first conferred with Hall on September 21
 
 
 [16]
 More evidence supporting Hall's attorney's contention that he was unprepared to proffer any evidence because of the time limitations appears in the appendix
 
 
 [1]
 The majority presumably concludes that waiver is not permissible except at non-critical stages, when it must be knowing and voluntary; however, that position does not seem to be supported by Proffitt. In addition, this interpretation--the only one that gives meaning to both statements quoted above--fails to take into account the instruction that the district court determine whether the "absence was at a non-critical stage and, therefore, harmless." I believe we should be clearer in instructing a district judge concerning further proceedings on remand
 
 
 [2]
 The Court stated:
 But we are unwilling to say that one charged with felony, and being in court, as was the appellant, with counsel at hand ready and competent to advise him of his rights, may not, in advance of the swearing of the jury, and before he is placed in jeopardy, consent to a private examination by the court of a juror against whom complaint had been made, for the purpose of ascertaining whether he was qualified to retain his place as one of the jury to try the case. Nor do we think it is affirmatively shown by the record in this case that any injury resulted to the substantial rights of the appellant by Alexander's dismissal from the jury.
 Id. at 192.
 
 
 [3]
 Both Rule 43 of the Federal Rules of Criminal Procedure, which guarantees the defendant the right to presence at all stages of his trial, and the Sixth Amendment were at issue in Dominguez (and several other cited cases). Rule 43 requires presence at stages of the trial when presence would not constitutionally be mandated, see generally 3A Wright, Federal Practice & Procedure Sec. 721 et seq.; therefore, Dominguez supports a holding based either on Rule 43 or the Constitution. (Of course, cases mandating presence under Rule 43 do not necessarily support a constitutional right to presence under similar circumstances.)